# EXHIBIT 1

*Tekita Bryant v. Loews Chicago Hotel, Inc., et al.*
**2018-CH-09477**

**Circuit Court File**

| 07/26/18 | Class Action Complaint | | 1. |
|---|---|---|---|
| 08/02/18 | Plaintiff's Motion for Class Certification | | 2. |
| 08/08/18 | Affidavit of Service of Summons on ADP | | 3. |
| 08/15/18 | Loews Appearance | | 4. |
| 08/16/18 | Order entering and continuing Motion for Class Certification | | 5. |
| 08/21/16 | Affidavit of Service of Summons on Loews Chicago Hotel, Inc. | | 6. |
| 09/09/18 | Notice of Change of Address | | 7. |
| 10/15/18 | Electronic Notice | | 8. |
| 10/18/18 | ADP, LLC Appearance | | 9. |
| 11/26/18 | Order continuing status | | 10. |
| 01/25/19 | Plaintiff's Notice of Authority | | 11. |
| 02/21/19 | Order setting deadline to answer and setting status | | 12. |
| 04/05/19 | Plaintiff's Motion for leave to file First Amended Complaint | | 13. |
| 04/12/19 | Order granting Motion to file First Amended Complaint | | 14. |
| 04/12/19 | First Amended Complaint | | 15. |

1

**12-Person Jury**

Return Date: No return date scheduled
Hearing Date: 11/26/2018 9:30 AM - 9:30 AM
Courtroom Number: 2305
Location: District 1 Court
Cook County, IL

FILED
7/26/2018 5:21 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09477

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TEKITA BRYANT, individually, and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) | **2018CH09477** |
| ) | Case No. |
| v. ) ) | |
| LOEWS CHICAGO HOTEL, INC., LOEWS CORPORATION, and ADP LLC, ) ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. ) | |

## CLASS ACTION COMPLAINT

Plaintiff Tekita Bryant ("Bryant" or "Plaintiff"), by and through her attorneys, individually and on behalf of all others similarly situated (the "Class"), brings the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Loews Chicago Hotel, Inc. ("Loews"), Loews Corporation ("Loews Corp."), and ADP LLC ("ADP") (collectively, "Defendants"), their subsidiaries and affiliates, to redress and curtail Defendants' unlawful collection, use, storage, and disclosure of Plaintiff's sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to herself, her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.      Defendant Loews is a luxury hospitality company that owns and operates twenty-five hotels in the United States and Canada, two of which are located in Illinois.

1

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

2.     When Loews hires an employee, he or she is enrolled in its ADP employee database. Defendants use the employee database to monitor the time worked by Loews hourly employees.

3.     While many employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Loews' employees are required to have their fingerprints scanned by a biometric timekeeping device.

4.     Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendants' – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

5.     Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee. This exposes Loews employees to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, and Facebook/Cambridge Analytica data breaches or misuses – employees have **_no_** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

6.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* https://www.opm.gov/cybersecurity/cybersecurity-incidents.

FILED DATE: 7/26/2018 5:21 PM  2018CH09477

7.      A black market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138. In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

8.      Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

9.      Notwithstanding the clear and unequivocal requirements of the law, Defendants disregard their employees' statutorily protected privacy rights and unlawfully collect, store, disseminate, and use their employees' biometric data in violation of BIPA. Specifically, Defendants have violated and continue to violate BIPA because they did not and continue not to:

     a.    Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, disseminated and used, as required by BIPA;

     b.    Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprints, as required by BIPA; and

FILED DATE: 7/26/2018 5:21 PM 2018CH09477

       c.      Receive a written release from Plaintiff and others similarly situated to collect, store, disseminate or otherwise use their fingerprints, as required by BIPA.

10.     Plaintiff and other similarly-situated individuals are aggrieved because they were not: (1) informed in writing of the purpose and length of time for which their fingerprints were being collected, stored, disseminated and used; (2) provided a publicly available retention schedule or guidelines for permanent destruction of the biometric data; and (3) provided (nor did they execute) a written release, as required by BIPA.

11.     Upon information and belief, Defendants Loews and Loews Corp. improperly disclose their employees' fingerprint data to at least one out-of-state third-party vendor, ADP.

12.     Upon information and belief, Loews and Loews Corp. improperly disclose their employees' fingerprint data to other, currently unknown, third parties, including, but not limited to third parties that host biometric data in their data center(s).

13.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and have not and will not destroy their biometric data as required by BIPA.

14.     Plaintiff and others similarly situated are aggrieved by each Defendants' failure to destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interactions with the company.

15.     Plaintiff and others similarly situated have suffered an injury in fact based on each Defendant's improper disclosures of their biometric data to third parties.

16.     Plaintiff and others similarly situated have suffered an injury in fact based on each Defendant's violations of their legal rights.

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

17.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties. The Illinois Attorney General has just ranked identity theft as the top scam targeting Illinois residents. (*See, e.g.*, Exhibit A).

18.     Employees have a proprietary right to control their biometric information. In failing to comply with the requirements of BIPA, employers intentionally interfere with each employee's right of possession and control over their valuable, unique, and permanent biometric data.

19.     Each Defendant is directly liable for, and had actual knowledge of, the BIPA violations alleged herein.

20.     Accordingly, Plaintiff, on behalf of herself as well as the putative Class, seeks an Order: (1) declaring that each Defendant's conduct violates BIPA; (2) requiring each Defendant to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

**PARTIES**

21.     Plaintiff Tekita Bryant is a natural person and a citizen of the State of Illinois.

22.     Defendant Loews Chicago Hotel Inc., is a corporation existing under the laws of the State of Delaware, with its principle place of business in Chicago, Illinois. Loews is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

23.     Defendant Loews Corporation, the parent company of Loews Chicago Hotel, Inc., is a corporation organized and existing under the laws of the State of Delaware, with its principle place of business in New York, New York.

5

FILED DATE: 7/26/2018 5:21 PM 2018CH09477

24.     Defendant ADP LLC is a Delaware limited liability company that is registered to do business in Illinois.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because they conduct business transactions in Illinois, committed statutory violations and tortious acts in Illinois, and are registered to conduct business in Illinois.

26.     Venue is proper in Cook County because Defendants conduct business in Cook County and committed the statutory violations alleged herein in Cook County.

## FACTUAL BACKGROUND

**I.     The Biometric Information Privacy Act.**

27.     Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias" 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS 14/5.

28.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. The bankruptcy was alarming to the Illinois legislature because there was suddenly a serious risk that millions of fingerprint records – which, similar to other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware the scanners were not

6

FILED DATE: 7/26/2018 5:21 PM    2018CH09477

transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

29.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

30.     Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

31.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

      a.      Informs the subject in writing that a biometric identifier or biometric information is being collected or stored;

      b.      Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

      c.      Receives a written release executed by the subject of the biometric identifier or biometric information."

*See* 740 ILCS 14/15(b).

32.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

FILED DATE: 7/26/2018 5:21 PM 2018CH09477

33.    Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

34.    BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

35.    BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

36.    The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology.    Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

37.    BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for

which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

38. Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

**II. Defendants Violate the Biometric Information Privacy Act.**

39. By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented using employees' biometric data as an authentication method stopped doing so.

40. However, Defendants failed to take note of the shift in Illinois law governing the collection and use of biometric data. As a result, each Defendant continues to collect, store, use and disseminate employees' biometric data in violation of BIPA.

41. Specifically, when employees are hired by Loews, they are required to have their fingerprints scanned to enroll them in its ADP employee database(s).

42. Loews uses an employee time tracking system supplied by ADP that requires employees to use their fingerprint as a means of authentication. Unlike a traditional timeclock, all Loews employees have to use their fingerprints to "punch" in and out of work.

43. Upon information and belief, Loews fails to inform its employees that it discloses their fingerprint data to at least one out-of-state third-party vendor, ADP; fails to inform its employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform its employees of the purposes and

9

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

duration for which it collects their sensitive biometric data; and fails to obtain written releases from employees before collecting their fingerprints.

44.     Upon information and belief, ADP fails to inform Loews employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform Loews employees of the purposes and duration for which it collects their sensitive biometric data; and fails to obtain written releases from employees before collecting their fingerprints.

45.     Furthermore, each Defendant fails to provide employees with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

46.     The Pay by Touch bankruptcy, which triggered the passage of BIPA, highlights why such conduct – where individuals are aware that they are providing a fingerprint but are not aware to whom or for what purposes they are doing so – is dangerous. This bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes it will be transmitted, and for how long. Each Defendant disregards these obligations and their employees' statutory rights and instead unlawfully collect, store, use, and disseminate employees' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

47.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and have not and will not destroy Plaintiff's and other similarly-situated

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interaction with each company.

48.     Loews' employees are not told what might happen to their biometric data if and when each Defendant merges with another company or worse, if and when each Defendant's business folds, or when the other third parties' that have received their biometric data businesses fold.

49.     Since Defendants neither publish a BIPA-mandated data retention policy nor disclose the purposes for their collection of biometric data, Loews employees have no idea whether any Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Moreover, Plaintiff and others similarly situated are not told to whom any Defendant currently discloses their biometric data to, or what might happen to their biometric data in the event of a merger or a bankruptcy.

50.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

51.     By and through the actions detailed above, Defendants disregarded Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**III.     Plaintiff Tekita Bryant's Experience**

52.     Plaintiff Tekita Bryant worked as a Star Service Agent at the Loews Hotel Chicago O'Hare location located at 5300 North River Road, Rosemont, Illinois, 60018. Bryant worked for Loews from January 2018 until July 2018.

53.     As a condition of employment, Bryant was required to scan her fingerprint so Loews could use it as an authentication method to track her time.

54.     Loews subsequently stored Bryant's fingerprint data in its ADP database(s).

11

FILED DATE: 7/26/2018 5:21 PM  2018CH09477

55.     Bryant was required to scan her fingerprint each time she began and ended her workday.

56.     Bryant has never been informed of the specific limited purposes or length of time for which any Defendant collected, stored, used, and/or disseminated her biometric data.

57.     Bryant has never been informed of any biometric data retention policy developed by any Defendant, nor has she ever been informed whether any Defendant will ever permanently delete her biometric data.

58.     Bryant has never been provided with nor ever signed a written release allowing any Defendant to collect, store, use or disseminate her biometric data.

59.     Bryant has continuously and repeatedly been exposed to the risks and harmful conditions created by each Defendants' violations of BIPA alleged herein.

60.     No amount of time or money can compensate Bryant if her biometric data is compromised by the lax procedures through which each Defendant captured, stored, used, and disseminated her and other similarly-situated individuals' biometrics, and Bryant would not have provided her biometric data to any Defendant if she had known that they would retain such information for an indefinite period of time without her consent.

61.     A showing of actual damages is not necessary in order to state a claim under BIPA. Nonetheless, Bryant has been aggrieved because she suffered an injury-in-fact based on each Defendant's violations of her legal rights. Defendants intentionally interfered with Bryant's right to possess and control her own sensitive biometric data. Additionally, Bryant suffered an invasion of a legally protected interest when each Defendant secured her personal and private biometric data at a time when it had no right to do so, a gross invasion of her right to privacy. BIPA protects

12

employees like Bryant from this precise conduct, and no Defendant had a lawful right to secure this data or share it with third parties absent a specific legislative license to do so.

62.    Bryant's biometric information is economically valuable, and such value will increase as the commercialization of biometrics continues to grow. As such, Bryant was not sufficiently compensated by any Defendant for its retention and use of her and other similarly-situated employees' biometric data. Bryant would not have agreed to work for either Defendant for the compensation she received if she had known that Defendants would retain her biometric data indefinitely.

63.    Bryant also suffered an informational injury because each Defendant failed to provide her with information to which she was entitled by statute. Through BIPA, the Illinois legislature has created a right: an employee's right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data – and an injury – not receiving this extremely critical information.

64.    Bryant also suffered an injury in fact because each Defendant improperly disseminated his biometric identifiers and/or biometric information to third parties, including but not limited to ADP and any other third party that hosted the biometric data in their data centers, in violation of BIPA.

65.    Pursuant to 740 ILCS 14/15(b), Bryant was entitled to receive certain information prior to Defendants securing her biometric data; namely, information advising her of the specific limited purpose(s) and length of time for which each Defendant collects, stores, uses and disseminates her private biometric data; information regarding each Defendant's biometric retention policy; and, a written release allowing each Defendant to collect, store, use, and disseminate her private biometric data.  By depriving Bryant of this information, Defendants

13

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

injured her. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

66.    Finally, as a result of each Defendant's conduct, Bryant has experienced personal injury in the form of mental anguish.  For example, Bryant experiences mental anguish and injury when contemplating what would happen to her biometric data if any Defendant went bankrupt, whether any Defendant will ever delete her biometric information, and whether (and to whom) any Defendant would share her biometric information.

67.    Bryant has plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the collection and retention of her biometric data; in the form of monetary damages by not obtaining additional compensation as a result of being denied access to material information about Defendants' policies and practices; in the form of the unauthorized disclosure of her confidential biometric data to third parties; in the form of interference with her right to control and possess her confidential biometric data; and, in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

68.    As Bryant is not required to allege or prove actual damages in order to state a claim under BIPA, she seeks statutory damages under BIPA as compensation for the injuries caused by Defendants.

**CLASS ALLEGATIONS**

69.    Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on her own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

70.    As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among

14

other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

71.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS 5/2-801 for the following class of similarly-situated employees under BIPA:

> All individuals working for any Defendant in the State of Illinois who had their fingerprints collected, captured, received, or otherwise obtained or disclosed by any Defendant during the applicable statutory period.

72.     This action is properly maintained as a class action under 735 ILCS 5/2-801 because:

A.     The class is so numerous that joinder of all members is impracticable;

B.     There are questions of law or fact that are common to the class;

C.     The claims of the Plaintiff are typical of the claims of the class; and,

D.     The Plaintiff will fairly and adequately protect the interests of the class.

**Numerosity**

73.     The total number of putative class members exceeds fifty (50) individuals. The exact number of class members can easily be determined from Defendants' payroll records.

**Commonality**

74.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendants' failure to comply with BIPA. The common questions of law and fact

15

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

FILED DATE: 7/26/2018 5:21 PM  2018CH09477

include, but are not limited to the following:

A.  Whether any Defendant collected, captured or otherwise obtained Plaintiff's biometric identifiers or biometric information;

B.  Whether any Defendant properly informed Plaintiff of their purposes for collecting, using, and storing her biometric identifiers or biometric information;

C.  Whether any Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's biometric identifiers or biometric information;

D.  Whether any Defendant has disclosed or re-disclosed Plaintiff's biometric identifiers or biometric information;

E.  Whether any Defendant has sold, leased, traded, or otherwise profited from Plaintiff's biometric identifiers or biometric information;

F.  Whether any Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction with the employee, whichever occurs first;

G.  Whether any Defendant complies with any such written policy (if one exists);

H.  Whether any Defendant used Plaintiff's fingerprints to identify her;

I.  Whether any Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

J.  Whether the violations of BIPA were committed negligently; and

K.  Whether the violations of BIPA were committed willfully.

75.  Plaintiff anticipates that Defendants will raise defenses that are common to the class.

**Adequacy**

76.  Plaintiff will fairly and adequately protect the interests of all members of the class,

16

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

### Typicality

77. The claims asserted by Plaintiff are typical of the class members she seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

78. Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS 5/2-801.

### Predominance and Superiority

79. The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

80.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to, fashion methods to efficiently manage this action as a class action.

### FIRST CAUSE OF ACTION
#### Violation of 740 ILCS 14/1, *et seq.*
#### (On Behalf of Plaintiff and the Class)

81.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

82.     BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

83.     BIPA also prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

18

FILED DATE: 7/26/2018 5:21 PM  2018CH09477

84.     Furthermore, BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

85.     Each Defendant fails to comply with these BIPA mandates.

86.     Defendant Loews Hotel Chicago, Inc., is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

87.     Defendant Loews Corporation is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

88.     Defendant ADP is a Delaware limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

89.     Plaintiff is an individual who had her "biometric identifiers" collected by each Defendant (in the form of her fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

90.     Plaintiff's biometric identifiers were used to identify her and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

91.     Each Defendant systematically and automatically collected, used, stored, and disclosed Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

92.     Upon information and belief, Loews systematically disclosed Plaintiff's biometric identifiers and biometric information to at least one third-party vendor, ADP.

19

FILED DATE: 7/26/2018 5:21 PM 2018CH09477

93.     Upon information and belief, each Defendant systematically disclosed Plaintiff's biometric identifiers and biometric information to other, currently unknown, third parties, which hosted the biometric data in their data centers.

94.     No Defendant informed Plaintiff in writing that her biometric identifiers and/or biometric information were being collected, stored, used, and disseminated, nor did any Defendant inform Plaintiff in writing of the specific purpose and length of term for which her biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

95.     No Defendant provides a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

96.     By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

97.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and have not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interaction with the company.

98.     These violations have raised a material risk that Plaintiff's and the Class's biometric data will be unlawfully accessed by third parties.

20

FILED DATE: 7/26/2018 5:21 PM    2018CH09477

99.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**SECOND CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

100.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

101.    Each Defendant owed Plaintiff and the Class a duty of reasonable care. Such duty required Defendants to exercise reasonable care in the collection and use of Plaintiff's and the Class's biometric data.

102.    Additionally, Loews owed Plaintiff and the Class a heightened duty – under which it assumed a duty to act carefully and not put Plaintiff and the Class at undue risk of harm – because of the employment relationship of the parties.

103.    Each Defendant breached its duties by failing to implement a BIPA-compliant biometric time tracking system with reasonable data security safeguards.

104.    Specifically, each Defendant breached its duties by failing to properly inform Plaintiff and the Class in writing of the specific purpose or length of time for which their fingerprints were being collected, stored, used, and disseminated.

21

FILED DATE: 7/26/2018 5:21 PM 2018CH09477

105. Each Defendant also breached its duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprint data.

106. Upon information and belief, each Defendant breached its duties because they lack retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and have not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interaction with either company.

107. These violations have raised a material risk that Plaintiff's and the Class's biometric data will be unlawfully accessed by third parties.

108. As a direct and proximate cause of each Defendant's negligent misrepresentations, Plaintiff and the other Class members have suffered from diminution in the unique identifying value of their biometric information caused by Defendants' repeated dissemination and exposure of such information to multiple third-parties, including ADP and data storage vendors, among others.

109. Defendants knew or should have known that their breach would cause Plaintiff and the other Class members to experience the foreseeable harms associated with the exposure of their biometrics to third parties, including the discontinuation of Plaintiff's and the Class member's exclusive possession and control of their biometrics and the accompanying loss of the unique identifying value of their biometrics.

110. Further, each Defendant's breach of its duty proximately caused and continues to cause an invasion of Plaintiff's and the Class's privacy, an informational injury, and mental anguish, in addition to the statutory damage provided in BIPA.

22

111.    Accordingly, Plaintiff seeks an order declaring that Defendants' conduct constitutes negligence and awarding Plaintiff and the Class damages in an amount to be calculated at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Tekita Bryant respectfully requests that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Tekita Bryant as Class Representative and appointing Stephan Zouras, LLP, as Class Counsel;

B.    Declaring that Defendants' actions, as set forth above, violate BIPA;

C.    Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.    Declaring that Defendants' actions, as set forth above, constitute negligence;

E.    Declaring that Defendants' actions, as set forth above, were willful;

F.    Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendants to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

G.    Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

H.    Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

I.    Provide such further relief as the Court deems just and equitable.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Date:   July 26, 2018                              Respectfully Submitted,

                                                   */s/ Haley R. Jenkins*
                                                   Ryan F. Stephan
                                                   James B. Zouras

23

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

Andrew C. Ficzko
Haley R. Jenkins
**STEPHAN ZOURAS, LLP**
205 N. Michigan Avenue
Suite 2560
Chicago, Illinois 60601
312.233.1550
312.233.1560 *f*
Firm ID: 43734
hjenkins@stephanzouras.com

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on July 26, 2018, I filed the attached with the Clerk of

the Court using the electronic filing system which will send such filing to all attorneys of record.


_/s/ Haley R. Jenkins_

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

# Exhibit A

FILED DATE: 7/26/2018 5:21 PM  2018CH09477





Not Just Security, the Right
Security.

# Data Breach QuickView Report

## Data Breach Trends - First Six Months of 2017

### Sponsored by:
### Risk Based Security

### Issued in July 2017

### Mega breaches continue while pace of disclosure shows signs of slowing

- There were 2,227 breaches reported in the first half of 2017, exposing over **6 billion** records.
- Top 10 breaches exposed 5.6 billion of the 6 billion records compromised.
- Top 10 Severity scores averaged 9.82 out of 10.0.
- The Business sector accounted for 56.5% of reported breaches, followed by Unknown (17%), Government (9.1%), Medical (9%), and Education (8.4%).
- The Business sector accounted for 93% of the total records exposed, followed by Government and Unknown (approximately 3% for each). Medical and Education sectors combined accounted for less than 1% of the total records exposed year to date.
- Web (inadvertent online disclosure) continues to be the leading cause of records compromised in 2017, accounting for 68.3% of records exposed, but only 7.1% of incidents reported so far this year.
- 41.6% of reported breaches were the result of Hacking, yet accounted for 30.6% of the exposed records.
- Breaches involving U.S. entities accounted for 61% of the breaches and approximately 30% of the exposed records.
- 29.3% of the breaches exposed between one and 1,000 records, 43.6% of breaches exposed between one and 10,000 records – virtually unchanged from Q12017.
- 121 breaches, or 5.4%, affected Third Parties.
- Fifty (50) breaches - 19 in Q2 and 31 in Q1 - exposed one million or more records.
- Four 2017 breaches are now on the Top 10 List of All Time Largest Breaches.
- The company DU Called, replaced River City Media for the top spot of the single largest breach disclosed, impacting 2 billion records.

  Copyright © 2017 Risk Based Security, Inc. All rights reserved.

# Table of Contents

Mid-Year 2017 Compared to Mid-Year of the Previous Four Years .......................................... 3

Mid-Year 2017 by Industry, by Month ................................................................................. 3

Mid-Year 2017 Analysis by Breach Type .............................................................................. 4

Mid-Year 2017 Data Breach Analysis by Threat Vector ......................................................... 5

Mid-Year 2017 Exposed Records by Threat Vector ................................................................ 5

Mid-Year 2017 Analysis by Data Family ............................................................................... 6

Mid-Year 2017 Confidentiality Impact ................................................................................. 6

Percentage of Breaches Exposing Data Types YTD 2017 vs. Prior Years ................................... 7

Mid-Year 2017 Analysis of Records per Breach ..................................................................... 8

Mid-Year 2017 Breach Types/Records Exposed – Top 5 .......................................................... 8

Distribtuion of Business Groups Within Economic Sectors – Top 3 ........................................... 9

Mid-Year 2017 Analysis by Country ..................................................................................... 9

Mid-Year 2017 Analysis by Country – Top 10 ....................................................................... 10

Mid-Year 2017 Exposed Records by Country ........................................................................ 10

Mid-Year 2017 Distribution of Breaches By State .................................................................. 11

Mid-Year 2017 Analysis of US State Rankings- Exposed Records ............................................. 11

Mid-Year 2017 Breaches Involving Third Parties ................................................................... 12

Mid-Year 2017 – Breach Severity Scores & Scoring ............................................................... 13

Mid-Year 2017 – Breach Severity Scores – Top 10 ................................................................ 13

Top 20 Largest Breaches All Time (Exposed Records Count) .................................................. 14

Methodology & Terms ...................................................................................................... 17

    Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

## Mid-Year 2017 Compared to Mid-Year of the Previous Four Years



## Mid-Year 2017 by Industry, by Month





     Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 7/26/2018 5:21 PM 2018CH09477

## Mid-Year 2017 Analysis by Breach Type

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

### Top 10 Breach Types – First 6 Months



The number of phishing incidents started to decline once the U.S. tax season came to a close.

Despite being the leading cause of records exposed, Web (inadvertent online disclosure) ranked fifth on number of incidents.

### Top 5 Breach Types by Records Exposed
### First 6 Months





While not making the top 5 list very often, a Stolen Computer from the COMELEC (Philippines Election Commission) offices resulted in 55.1 million voter records exposed.

       Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 7/26/2018 5:21 PM 2018CH09477

## Mid-Year 2017 Data Breach Analysis by Threat Vector



**Number of Incidents by Threat Vector**

| Threat Vector | Value |
|---|---|
| Outside | 1794 |
| Inside-Accidental | 189 |
| Inside-Unknown | 87 |
| Inside-Malicious | 80 |
| Unknown | 77 |

16.0% of incidents were the result of insider activity, up slightly from 12.1% of incidents reported in Q12017.

## Mid-Year 2017 Exposed Records by Threat Vector

| Threat Vector | Records Exposed |
|---|---|
| Outside | 2,227,842,612 |
| Inside-Unknown | 2,001,248,057 |
| Inside-Accidental | 1,739,943,232 |
| Unknown | 45,540,090 |
| Inside-Malicious | 567,571 |
| **Total** | **6,015,141,562** |

A single insider incident exposed Two billion records.

## Mid-Year 2017 – Breach Discovery Method

| | Internal Discovery - Incidents | Internal Discovery - Records | External Discovery - Incidents | External Discovery - Records | Undisclosed Discovery - Incidents | Undisclosed Discovery - Records |
|---|---|---|---|---|---|---|
| Q1 | 221 | 65,173,264 | 783 | 3,345,957,501 | 376 | 17,670,845 |
| Q2 | 222 | 2,966,956 | 314 | 486,285,236 | 311 | 2,097,077,760 |
| YTD | 443 | 68,140,220 | 1,097 | 3,832,242,737 | 687 | 2,114,748,605 |

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Mid-Year 2017 Top 10 Breaches Data Types and Severity Scores[1]

| Breach Type | Records Exposed | Percentage of Total Exposed | Data Type[2] | Severity Score |
|---|---|---|---|---|
| Web | 2,000,000,000 | 33.2% | ADD/NAA/NUM | 10.0 |
| Web | 1,374,159,612 | 22.8% | ADD/EMA/FIN/MISC/NAA | 10.0 |
| Hack | 1,221,893,767 | 20.3% | EMA/PWD | 10.0 |
| Web | 267,693,854 | 4.5% | EMA/NUM | 9.80 |
| Web | 198,000,000 | 3.3% | ADD/DOB/MISC/NAA/NUM | 10.0 |
| Web | 135,000,000 | 2.2% | ADD/FIN/MISC/NAA/NUM/SSN | 9.68 |
| Hack | 129,696,449 | 2.2% | EMA/PWD | 9.71 |
| Hack | 126,761,168 | 2.1% | ADD/NAA/NUM | 9.40 |
| Hack | 91,890,110 | 1.5% | EMA/PWD/USR | 9.56 |
| Hack | 77,000,000 | 1.3% | EMA/PWD/USR | 9.96 |
| The top 10 breaches exposed 5,622,094,960 records, or 93.4% of the total records exposed in the first 6 months | | | | |

## Mid-Year 2017 Analysis by Data Family

| Data Family | Percentage of Total Breaches Mid-Year 2016 | Percentage of Total Exposed Records Mid-Year 2016 | Percentage of Total Breaches Mid-Year 2017 | Percentage of Total Exposed Records Mid-Year 2017 |
|---|---|---|---|---|
| Electronic | 90.18% | 99.98% | 93.22% | 99.98% |
| Physical | 6.75% | <1% | 4.62% | <1% |
| Unknown | 3.07% | <1% | 2.16% | <1% |

## Mid-Year 2017 Confidentiality Impact

**Confidentiality Impact**



Unknown 4%
Potential 15%
Confirmed 81%

The majority of breaches continue to result in confirmed unauthorized access to sensitive data

---

[1] See page 13 for additional detail on these incidents.
[2] See page 17 for a description of abbreviations.

6 | Data Breach Intelligence     Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

## Mid-Year 2017 Analysis by Data Type - Percentage of Breaches



### Incidents by Data Type Exposed

Compared to the same time period in 2016, the percentage of breaches impacting Social Security numbers increased from 17.6% in 2016 to 26.1% in 2017. Likewise, the percentage of breaches impacting Names increased from 36.1% to 40.6% and the percentage impacting physical addresses increased from 21.6% to 30.4%. Research indicates this effect is attributable to the steady rise of successful phishing campaigns targeting W-2 data during the first 4 months of the year.

## Percentage of Breaches Exposing Data Types YTD 2017 vs. Prior Years

| Data Type | First 6 Months 2017 | First 6 Months 2016 | First 6 Months 2015 |
|---|---|---|---|
| Name | 40.6% | 36.1% | 27.8% |
| Email Address | 33.2% | 42.9% | 45.5% |
| Physical Address | 30.4% | 21.6% | 12.3% |
| Password | 28% | 39.8% | 52.2% |

The "W-2 phishing effect" is more evident when comparing the percentage of breaches impacting 2017's top four data types over time. Access credentials in the form of username / email address and password remain popular targets, but the overall number of breaches impacting these records has steadily declined during the first half of 2017 as attention turns to data more directly useful for tax fraud.

     Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

## Mid-Year 2017 Analysis of Records per Breach

| Exposed Records | Number of Breaches | Percent of Total |
|---|---|---|
| Unknown/Undisclosed | 1024 | 46.0% |
| 1 to 100 | 317 | 14.2% |
| 101 to 1,000 | 336 | 15.1% |
| 1,001 to 10,000 | 320 | 14.4% |
| 10,001 to 100,000 | 132 | 5.9% |
| 100,001 to 500,000 | 36 | 1.6% |
| 500,001 to 999,999 | 12 | 0.5% |
| 1 M to 10 M | 30 | 1.3% |
| > 10 M | 20 | 0.9% |

For the third year in a row, the number of incidents with exposed records either unknown or unreported increased. At this point in 2015, it was 27.6%; in 2016, it was 35.4%.

## Mid-Year 2017 Breach Types/Records Exposed – Top 5

| Breach Category | Number of Breaches | Number of Records Exposed | Average Records per Breach | Percent of Total Records Exposed |
|---|---|---|---|---|
| Hacking | 927 | 1,839,750,699 | 1,984,629 | 30.59% |
| Skimming | 272 | 4,874 | 18 | 0.00% |
| Phishing | 253 | 458,964 | 1,814 | 0.01% |
| Virus/Malware | 209 | 6,918,120 | 33,101 | 0.12% |
| Web | 158 | 4,069,836,698 | 25,758,460 | 67.67% |

## Mid-Year 2017 Analysis of Incidents by NAICS Economic Sector

### Distribution of Incidents by Economic Sector



   Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 7/26/2018 5:21 PM  2018CH09477

## Distribtuion of Business Groups Within Economic Sectors – Top 3

| Economic Sector | Business Group | Percentage of Breaches Within Economic Sector |
|---|---|---|
| Information (51) | Software / Web Services | 79.9% |
| | Mass Media | 11.2% |
| | Telecommunications | 7.3% |
| HealthCare (62) | Non-Hospital Facilities | 33.3% |
| | Hospitals | 29.5% |
| | Practitioner Offices | 29.5% |
| Public Sector (92) | Federal | 33.8% |
| | State | 20.6% |
| | Cities | 19.5% |

## Mid-Year 2017 Analysis by Country



Incidents by Location

Other 23.6%
USA 61.4%
Unknown 15.0%



Records Exposed by Location

Other 67.9%
USA 31.1%
Unknown 1.0%

The Top 10 countries accounted for 1,708, or 76.6% of the breaches reported and 97.7% of the records compromised.

  Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

## Mid-Year 2017 Analysis by Country – Top 10



### Incidents by Country –Top 10

| Country | |
|---|---|
| United States | 1367 |
| United Kingdom | 104 |
| Canada | 59 |
| India | 52 |
| Australia | 34 |
| China | 22 |
| Ukraine | 19 |
| Russian Federation | 19 |
| Indonesa | 18 |
| Iran | 14 |

North America accounted for 64.2% of breaches

## Mid-Year 2017 Exposed Records by Country

| Ranking | Number of Breaches | Country | Total Exposed Records | Average Records per Breach | Median Number of Records | Percentage of Exposed Records |
|---|---|---|---|---|---|---|
| 1 | 22 | China | 3,822,024,257 | 173,728,375 | 3,371,754 | 48.83% |
| 2 | 1367 | United States | 3,746,193,334 | 2,740,449 | 1,700 | 47.86% |
| 3 | 52 | India | 179,055,018 | 3,443,366 | 308 | 2.29% |
| 4 | 2 | Philippines | 55,254,020 | 27,627,010 | - | 0.71% |
| 5 | 7 | Hong Kong | 12,041,792 | 1,720,256 | 1,890,876 | 0.15% |
| 6 | 4 | South Africa | 6,700,000 | 1,675,000 | - | 0.09% |
| 7 | 104 | United Kingdom | 2,401,829 | 23,095 | 669 | 0.03% |
| 8 | 59 | Canada | 2,107,262 | 35,716 | 503 | 0.03% |
| 9 | 2 | Finland | 1,100,023 | 550,012 | - | 0.01% |
| 10 | 7 | Japan | 722,096 | 103,157 | 121 | 0.01% |

Large breaches affecting 1,000,000 or more records heavily influences the average number of records lost in certain countries. The median number of records lost in the five countries reporting the most breaches ranges between 308 and 1,700, with Australia coming in at 872.

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 7/26/2018 5:21 PM    2018CH09477

## Mid-Year 2017 Distribution of Breaches By State



Incidents by US State –
Top 10

| | |
|---|---|
| CA | 140 |
| TX | 98 |
| FL | 94 |
| NY | 90 |
| PA | 60 |
| VA | 46 |
| OH | 45 |
| IL | 44 |
| MD | 44 |
| NC | 35 |

The top 10 states represent 51% of US breaches.

## Mid-Year 2017 Analysis of US State Rankings- Exposed Records

| Exposed Records Ranking | US State | Total Exposed Records | Number of Breaches | Exposed Records/Breach | Percentage of USA Exposed Records |
|---|---|---|---|---|---|
| 1 | WA | 1,375,336,881 | 27 | 50,938,403 | 73.42% |
| 2 | NJ | 33,724,579 | 29 | 1,162,917 | 1.31% |
| 3 | CA | 10,690,370 | 140 | 76,360 | 0.31% |
| 4 | NY | 8,163,474 | 90 | 90,705 | 0.19% |
| 5 | AR | 4,890,000 | 7 | 698,571 | 0.16% |
| 6 | TX | 4,777,984 | 98 | 48,755 | 0.15% |
| 7 | GA | 3,798,732 | 23 | 165,162 | 0.10% |
| 8 | MD | 2,674,211 | 44 | 60,778 | 0.09% |
| 9 | MI | 2,426,296 | 22 | 110,286 | 0.07% |
| 10 | FL | 1,519,843 | 94 | 16,169 | 0.02% |

Copyright © 2017 Risk Based Security, Inc. All rights reserved.

**Mid-Year 2017 Breaches Involving Third Parties**

## Third Party Breaches by Business Type



- Medical
- Government
- Business
- Unknown
- Education

- Organizations classified in the business sector account for more than 50% of the breaches impacting data belonging to customers, clients or other 3rd parties.
- Three of the largest breaches reported in the first six months impacted 3rd parties.
- Hacking remains the dominant breach type for incidents impacting 3rd Parties, with regard to both the number of breaches and the number of records compromised.



FILED DATE: 7/26/2018 5:21 PM   2018CH09477

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

## Mid-Year 2017 – Breach Severity Scores & Scoring

We can all readily agree that not all data breaches are created equal. Where disagreement arises is when we attempt to rate the 'severity' or 'impact' of a breach. At Risk Based Security we have combined our knowledge of the security industry, business experience and our comprehensive data breach information to calculate a Data Breach Severity Score.



### Breach Severity Scores by Quarter

| | 9.0 – 10.0 | 8.0 – 8.99 | 7.0 – 7.99 | 6.0 – 6.99 | 5.0 – 5.99 | 4.0 – 4.99 | 3.0 – 3.99 | 2.0 – 2.99 | 1.0 – 1.99 | < 1 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1Q2017 | 12 | 11 | 27 | 78 | 319 | 574 | 244 | 60 | 46 | 4 |
| 2Q2017 | 6 | 5 | 44 | 17 | 39 | 245 | 330 | 143 | 18 | 5 |

On a positive note, breach severity scores declined in the second quarter of 2107. 58.2% of breaches reported in Q2 scored 3 or below while 25.7% of Q1 reported breaches scored 3 or below.

## Mid-Year 2017 – Breach Severity Scores – Top 10

| Score | Reported | Organization | Top 10 Summary |
|---|---|---|---|
| 10 | Q2 | DU Group dba DU Caller | (Web) 2,000,000,000 user phone numbers, names and addresses inappropriately made accessible in an uncensored public directory |
| 10 | Q1 | NetEase, Inc. dba 163.com | (Hacking) 1,221,893,767 email addresses and passwords stolen by hackers and sold on the Dark Web by DoubleFlag |
| 10 | Q1 | River City Media, LLC | (Web) 1,374,159,612 names, addresses, IP addresses, and email addresses, as well as an undisclosed number of financial documents, chat logs, and backups exposed by faulty `rsync` backup |
| 10 | Q2 | Deep Root Analytics | (Web) Approximately 198,000,000 voter names, addresses, dates of birth, phone numbers, political party affiliations, and other demographic information exposed in an unsecured Amazon S3 bucket |

     Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

| Score | Reported | Organization | Top 10 Summary |
|-------|----------|--------------|----------------|
| 9.96 | Q2 | Edmodo | (Hacking) 77,000,000 user email addresses, usernames, and `bcrypt` hashed passwords with salts stolen by hackers through undisclosed means |
| 9.80 | Q1 | EmailCar | (Web) 267,693,854 email addresses and phone numbers exposed in an unsecure MongoDB installation and later dumped on the Internet |
| 9.71 | Q1 | Tencent Holdings Ltd dba QQ.com | (Hacking) 129,696,449 email addresses and passwords stolen by hackers and sold on the Dark Web by DoubleFlag |
| 9.68 | Q2 | National Social Assistance Programme (India) | (Web) Roughly 135,000,000 Aadhaar numbers and 100,000,000 linked bank account numbers, as well as names, caste, religion, addresses, phone numbers, photographs, and assorted financial details leaked on government web portals |
| 9.56 | Q2 | Youku | (Hacking) 91,890,110 user accounts with usernames, email addresses and MD5 encrypted passwords compromised by hackers and offered for sale |
| 9.45 | Q1 | Yahoo Japan | (Hacking) 23,590,165 email addresses and passwords stolen by hackers and sold on the Dark Web by DoubleFlag |

## Top 20 Largest Breaches All Time (Exposed Records Count)

| Breach Reported Date | Summary | Records Exposed | Organization's Name | Industry-Sector | Breach Location |
|----------------------|---------|-----------------|---------------------|-----------------|-----------------|
| **Highest All Time** 5/13/2017 | User phone numbers, names and addresses inappropriately made accessible in an uncensored public directory | 2 Billion | DU Caller Group (DU Caller) | Business - Technology | China |
| **Number 2** 3/3/2017 | Names, addresses, IP addresses, and email addresses, as well as an undisclosed number of financial documents, chat logs, and backups, exposed by faulty `rsync` backup. | 1.3 Billion | River City Media, LLC | Business - Technology | United States |
| **Number 3** 1/25/2017 | A database holding email addresses and passwords stolen by hackers and offered for sale on the dark web. | 1.2 Billion | NetEase, Inc. dba 163.com | Business – Technology | China |

        Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 7/26/2018 5:21 PM  2018CH09477

| Breach Reported Date | Summary | Records Exposed | Organization's Name | Industry-Sector | Breach Location |
|---|---|---|---|---|---|
| **Number 4** 12/14/2016 | While investigating the #4 incident on this list, a second hacking event was discovered targeting user names, email addresses, phone numbers, dates of birth, hashed passwords and security questions and associated answers. | 1 Billion | Yahoo | Business - Technology | United States |
| **Number 5** 9/22/2016 | Hack exposes user names, email addresses, phone numbers, dates of birth, hashed passwords and security questions and associated answers. | 500 Million | Yahoo | Business - Technology | United States |
| **Number 6** 10/18/2016 | Hackers exploit a Local File Inclusion vulnerability, compromising member email addresses, usernames, and encrypted passwords, IP addresses and membership statuses. | 412 Million | FriendFinder Networks, Inc | Business - Technology | United States |
| **Number 7** 5/27/2016 | Hack exposes user account records containing SHA1 encrypted passwords, email addresses. | 360 Million | MySpace | Business - Technology | United States |
| **Number 8** 1/1/2017 | Email addresses and phone numbers were exposed in an unsecure MongoDB installation, which was later downloaded and dumped on the Internet | 267 Million | EmailCar | Business - Technology | China |
| **Number 9** 8/22/2014 | Hack of websites exposes names, registration numbers, usernames and passwords. | 220 Million | Organization's Name has not been reported | Unknown | South Korea |
| **Number 10** 12/3/2016 | Hackers offer for sale a database containing a variety of personal and financial details. | 203 Million | Organization's Name has not been reported | Unknown | Unknown |
| **Number 11** 10/19/2013 | Fraudulent account used to gain access to credit card numbers, social security numbers, names, and financial account numbers. | 200 Million | Court Ventures, Inc. | Business - Data | United States |
| **Number 12** 6/19/2017 | Unsecured Amazon S3 bucket exposes voter names, addresses, dates of birth, contact information and voter preferences. | 198 Million | Deep Root Analytics | Business / Business | United States |

        Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 7/26/2018 5:21 PM  2018CH09477

| Breach Reported Date | Summary | Records Exposed | Organization's Name | Industry-Sector | Breach Location |
|---|---|---|---|---|---|
| **Number 13** 12/28/2015 | Mis-configured database exposes voter names, dates of birth, addresses, phone numbers, political party affiliations, and genders. | 191 Million | Organization's Name has not been reported | Unknown | United States |
| **Number 14** 6/21/2014 | Hack exposes trip details of customers after cracking MD5 hashes | 173 Million | NYC Taxi & Limousine Commission | Government - City | United States |
| **Number 15** 6/23/2016 | Hack exposes USA voter information. | 154 Million | Organization's Name has not been reported | Unknown | United States |
| **Number 16** 10/3/2013 | Hack exposed customer names, IDs, encrypted passwords and debit/ credit card numbers with expiration dates, source code and other customer order information. | 152 Million | Adobe Systems, Inc. | Business - Technology | United States |
| **Number 17** 3/17/2012 | Firm may have illegally bought and sold customers' information. | 150 Million | Shanghai Roadway D&B Marketing Services Co. | Business - Data | China |
| **Number 18** 5/21/2014 | Hack exposes names, encrypted passwords, email addresses, registered addresses, phone numbers and dates of birth. | 145 Million | eBay, Inc. | Business - Retail | United States |
| **Number 19** 6/8/2013 | North Korean Hackers expose email addresses and identification numbers. | 140 Million | Organization's Name has not been reported | Unknown | South Korea |
| **Number 20** 5/2/2017 | Leaky governmental websites expose Aadhaar numbers, banking details, names and other personal information. | 135 Million | National Social Assistance Programme | Government - Federal | India |

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

## Methodology & Terms

Risk Based Security's research methods include automated processes coupled with traditional human research and analysis. Our proprietary applications crawl the Internet 24x7 to capture and aggregate potential data breach breaches for our researchers to analyze. In addition, the research team manually verifies news feeds, blogs, and other sources looking for new data breaches as well as new information on previously disclosed incidents. The database also includes information obtained through Freedom of Information Act (FOIA) requests, seeking breach notification documentation from various state and federal agencies in the United States. The research team extends our heartfelt thanks to the individuals and agencies that assist with fulfilling our requests for information.

### Data Standards and the use of "Unknown"

In order for any data point to be associated with a breach entry, Risk Based Security requires a high degree of confidence in the accuracy of the information reported as well as the ability to reference a public source for the information. In short, the research team does not guess at the facts. For this reason the term "Unknown" is used when the item cannot be verified in accordance with our data validation requirements. This can occur when the breached organization cannot be identified but leaked data is confirmed to be valid or when the breached organization is unwilling or unable to provide sufficient clarity to the data point.

### Breach Types are defined as follows:

| Name | Description |
|---|---|
| Disposal Computer | Discovery of computers not disposed of properly |
| Disposal Document | Discovery of documents not disposed of properly |
| Disposal Drive | Discovery of disk drives not disposed of properly |
| Disposal Mobile | Discovery of mobile devices not disposed of properly |
| Disposal Tape | Discovery of backup tapes not disposed of properly |
| Email | Email communication exposed to unintended third party |
| Fax | Fax communication exposed to unintended third party |
| Fraud SE | Fraud or scam (usually insider-related), social engineering |
| Hack | Computer-based intrusion |
| Lost Computer | Lost computer (unspecified type in media reports) |
| Lost Document | Discovery of documents not disposed of properly, not stolen |
| Lost Drive | Lost data drive (unspecified if IDE, SCSI, thumb drive, etc.) |
| Lost Laptop | Lost laptop (generally specified as a laptop in media reports) |
| Lost Media | Media (e.g. disks) reported to have been lost by a third party |
| Lost Mobile | Lost mobile phone or device such as tablets, etc. |
| Lost Tape | Lost backup tapes |
| Missing Document | Missing document, unknown or disputed whether lost or stolen |
| Missing Drive | Missing drive, unknown or disputed whether lost or stolen |
| Missing Laptop | Missing laptop, unknown or disputed whether lost or stolen |
| Missing Media | Missing media, unknown or disputed whether lost or stolen |
| Other | Miscellaneous breach type not yet categorized |
| Phishing | Masquerading as a trusted entity in an electronic communication to obtain data |
| Seizure | Forcible taking of property by a government law enforcement official |
| Skimming | Using electronic device (skimmer) to swipe victims' credit/debit card numbers |
| Snail Mail | Personal information in "snail mail" exposed to unintended third party |
| Snooping | Exceeding intended privileges and accessing data not authorized to view |
| Stolen Computer | Stolen desktop (or unspecified computer type in media reports) |
| Stolen Document | Documents either reported or known to have been stolen by a third party |
| Stolen Drive | Stolen data drive, unspecified if IDE, SCSI, thumb drive, etc. |
| Stolen Laptop | Stolen Laptop (generally specified as a laptop in media reports) |
| Stolen Media | Media generally reported or known to have been stolen by a third party |

 Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

FILED DATE: 7/26/2018 5:21 PM   2018CH09477

| Name | Description |
|------|-------------|
| Stolen Mobile | Stolen mobile phone or device such as tablets, etc. |
| Stolen Tape | Stolen backup tapes |
| Unknown | Unknown or unreported breach type |
| Virus (Malware) | Exposure to personal information via virus or Trojan (possibly classified as hack) |
| Web | Web-based intrusion, data exposed to the public via search engines, public pages |

**Data Type Definitions**

| Abbreviation | Description |
|--------------|-------------|
| CCN | Credit Card Numbers |
| SSN | Social Security Numbers (or Non-US Equivalent) |
| NAA | Names |
| EMA | Email Addresses |
| MISC | Miscellaneous |
| MED | Medical |
| ACC | Account Information |
| DOB | Date of Birth |
| FIN | Financial Information |
| UNK | Unknown |
| PWD | Passwords |
| ADD | Addresses |
| USR | User Name |
| NUM | Phone Number |
| IP | Intellectual Property |

**NO WARRANTY.**

*Risk Based Security, Inc. makes this report available on an "As-is" basis and offers no warranty as to its accuracy, completeness or that it includes all the latest data breach breaches. The information contained in this report is general in nature and should not be used to address specific security issues. Opinions and conclusions presented reflect judgment at the time of publication and are subject to change without notice. Any use of the information contained in this report is solely at the risk of the user. Risk Based Security, Inc. assumes no responsibility for errors, omissions, or damages resulting from the use of or reliance on the information herein. If you have specific security concerns please contact Risk Based security, Inc. for more detailed data loss analysis and security consulting services.*

Copyright © 2017 Risk Based Security, Inc. All rights reserved.

FILED DATE: 7/26/2018 5:21 PM 2018CH09477

# About Risk Based Security

Risk Based Security (RBS) provides detailed information and analysis on Data Breaches, Vendor Risk Scores and Vulnerability Intelligence. Our products, Cyber Risk Analytics (CRA) and VulnDB, provide organizations with access to the most comprehensive threat intelligence knowledge bases available, including advanced search capabilities, access to raw data via API, and email alerting to assist organizations in taking the right actions in a timely manner.  In addition, our YourCISO offering provides organizations with on-demand access to high quality security and information risk management resources in one, easy to use web portal.

VulnDB is the most comprehensive and timely vulnerability intelligence available and provides actionable information about the latest in security vulnerabilities via an easy-to-use SaaS Portal, or a RESTful API for easy integration into GRC tools and ticketing systems. VulnDB allows organizations to search on and be alerted to the latest vulnerabilities, both in end-user software and the third-party libraries or dependencies that help build applications. A subscription to VulnDB provides organizations with simple to understand ratings and metrics on their vendors and products, and how each contributes to the organization's risk-profile and cost of ownership.

Cyber Risk Analytics (CRA) provides actionable security ratings and threat intelligence on a wide variety of organizations. This enables organizations to reduce exposure to the threats most likely to impact them and their vendor base. In addition, our PreBreach vendor risk rating, the result of a deep-view into the metrics driving cyber exposures, are used to better understand the digital hygiene of an organization and the likelihood of a future data breach. The integration of PreBreach ratings into security processes, vendor management programs, cyber insurance processes and risk management tools allows organizations to avoid costly risk assessments, while enabling businesses to understand its risk posture, act quickly and appropriately to proactively protect its most critical information assets.

YourCISO provides organizations with on-demand access to high quality security and information risk management resources in one, easy to use web portal.  YourCISO provides organization ready access to a senior executives and highly skilled technical security experts with a proven track record, matched specifically to your needs. The YourCISO service is designed to be an affordable long term solution for addressing information security risks.  YourCISO brings together all the elements an organization needs to develop, document and manage a comprehensive information security program.

For more information, please visit:

https://www.riskbasedsecurity.com/
https://vulndb.cyberriskanalytics.com/
https://www.cyberriskanalytics.com/
https://www.yourciso.com/

Or call 855-RBS- RISK.

     Copyright © 2017 Risk Based Security, Inc. All rights reserved.

2

Return Date: No return date scheduled
Hearing Date: 8/16/2018 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED
8/2/2018 3:35 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09477

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| TEKITA BRYANT, individually, and on behalf of all others similarly situated, | ) )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 2018-CH-09477<br>) |
| LOEWS CHICAGO HOTEL, INC., LOEWS CORPORATION, and ADP LLC, | )<br>)<br>) |
| Defendants. | )<br>) |

<u>**NOTICE OF MOTION**</u>

PLEASE TAKE NOTICE that on <u>**Thursday, August 16, 2018**</u> at <u>**9:30 a.m.**</u> or as soon thereafter as counsel may be heard, I shall appear before the Honorable Pamela M. Meyerson, or any judge sitting in her stead, in the courtroom usually occupied by her at 50 W. Washington St., Chicago, Illinois, Room 2305, and present **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.**

Respectfully submitted,

*/s/ Haley R. Jenkins*
Attorneys for Plaintiff
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, IL 60601
Telephone: 312-233-1550

FILED DATE: 8/2/2018 3:35 PM 2018CH09477

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on August 2, 2018, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Haley R. Jenkins*

2

Return Date: No return date scheduled
Hearing Date: 8/16/2018 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED
8/2/2018 3:35 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09477

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TEKITA BRYANT, individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **Case No. 2018-CH-09477** ) |
| LOEWS CHICAGO HOTEL, INC., LOEWS CORPORATION, and ADP LLC, | ) ) ) |
| Defendants. | ) ) |

### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND REQUEST FOR DISCOVERY ON CERTIFICATION ISSUES

Plaintiff Tekita Bryant ("Plaintiff") alleges that Defendants, Loews Hotel Chicago, Inc. ("Loews"), Loews Corporation ("Loews Corp.") and Kronos, Inc. (Kronos") (collectively, "Defendants"), systematically violated the Biometric Information Privacy Act ("BIPA") 740 ILCS 14/1, *et seq.* This case is well suited for class certification pursuant to 735 ILCS 5/2-801. Specifically, Plaintiff seeks to certify a class consisting of hundreds of former and current similarly-situated employees who worked for Defendant Loews in the State of Illinois who had their fingerprints unlawfully collected, captured, received, otherwise obtained, or disclosed by Defendants during the applicable statutory period in violation of BIPA. The question of liability is a legal question that can be answered in one fell swoop. As Plaintiff's claims and the claims of similarly-situated individuals all arise from Defendants' uniform policies and practices, they satisfy the requirement of 735 ILCS 5/2-801 and should be certified.

Plaintiff moves for class certification to protect members of the proposed class, employees whose proprietary and legally protected personal and private biometric data was invaded by

1

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

Defendants. Plaintiff believes that the evidence and argumentation submitted within this motion are sufficient to allow the class to be certified now. However, in the event the Court (or Defendants) wishes for the parties to undertake formal discovery prior to the Court's consideration of this motion, Plaintiff requests that the Court allow her to supplement her briefing and defer the response and reply deadlines.

## I.   RELEVANT BACKGROUND

### A. The Biometric Information Privacy Act

Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became wary of this then-growing, yet unregulated, technology. *See* 740 ILCS 14/5.

The Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* was enacted in 2008, arising from concerns that these experimental uses of finger-scan technologies created a "very serious need of protections for the citizens of Illinois when it comes to biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. Under the Act, it is unlawful for a private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless it first:

> (1) Informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) Informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) Receives a written release executed by the subject of the biometric identifier or biometric information."

2

740 ILCS 14/15(b).

Although there may be benefits with using biometrics in the workplace, there are also serious risks. Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are a unique, permanent biometric identifier associated with each individual. These biometrics are biologically unique to the individual; once compromised, the individual has *no* means by which to prevent identity theft, unauthorized tracking, or other unlawful or improper use of this information. This exposes individuals to serious and irreversible privacy risks. For example, if a biometric database is hacked, breached, or otherwise exposed – as in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, and Facebook/Cambridge Analytica data breaches, to name a few – individuals have no means to prevent the misappropriation and theft of their proprietary biometric makeup. Thus, recognizing the need to protect its citizens from harms like these, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

### A. Factual Allegations

Plaintiff Tekita Bryant filed this class action against Defendants on July 26, 2018, to redress Defendants' unlawful collection, use, storage, and disclosure of biometric information of their employees under BIPA. In her Class Action Complaint, Chatman provided detailed allegations that Loews employees were and continue to be universally required to scan their fingerprints for enrollment in its employee database(s) as a condition of their employment, but are not: (1) informed in writing of the purpose(s) and length of time for which fingerprint data is being collected, stored, used, and disseminated by Defendants; (2) provided a publicly available retention

3

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

schedule or guidelines for permanent destruction of the data by Defendants; and (3) provided (nor did they execute) a written release for Defendants, as required by BIPA. *See* Compl. ¶¶ 9-10.

Bryant worked as a Star Service Agent for Loews, at its location located at 5300 North River Road, Rosemont, Illinois, 60018. *Id.* ¶ 52. Bryant worked for Defendant Loews from approximately January 2018, to July 2018. *Id.* As an employee and as a condition of her employment, Bryant was required to scan her fingerprint so that Loews could use it as an authentication method to track her time. *Id.* ¶ 53. Defendants subsequently stored Loews' fingerprint data in its ADP employee database(s). *Id.* ¶ 54. Bryant was required to scan her fingerprint at the start and end of every work day. *Id.* ¶ 55. However, Defendants failed and continue to fail to inform C & B's employees, including Bryant, of the extent of the purposes for which they collect employees' sensitive biometric data or to whom the data is disclosed. *Id.* ¶¶ 56-57. Defendants similarly failed to provide Loews' employees, including Bryant, with a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying employees' fingerprint data when the initial purpose for collecting or obtaining their fingerprint is no longer relevant, as required by BIPA. *Id.* ¶¶ 57, 105. Employees, including Bryant, have no knowledge when they leave the company of when – if ever – their biometric identifiers will be removed from Defendants' database(s). *Id.* ¶ 47. Loews' employees are not told what might happen to their biometric data if and when it merges with another company or, worse, if and when Defendants' entire business folds. *Id.* ¶ 48. Because Defendants neither publishes a BIPA-mandated data retention policy nor discloses the purposes for its collection of biometric data, employees, including Bryant, have no idea whether any Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. *Id.* ¶ 49. Nor are employees told to whom any Defendant currently discloses their biometric data or what might happen to their biometric

4

FILED DATE: 8/2/2018 3:35 PM    2018CH09477

data in the event of a merger or a bankruptcy. *Id.* Finally, Defendants never secured a written release executed by any of Loews' employees, including Bryant, permitting them to collect, store, use, and disseminate employees' biometric data, as required by BIPA. *Id.* ¶¶ 9-10, 43-44, 58, 94.

Accordingly, Defendants' practices violated BIPA. As a result of Defendants' violations, Plaintiff and similarly-situated individuals were subject to Defendants' common and uniform policies and practices and were victims of its scheme to unlawfully collect, store, use, and disseminate its employees' biometric data in direct violation of BIPA. As a result of Defendants' violations of BIPA, Plaintiff and all other similarly-situated individuals suffered an invasion of privacy and other damages.[1]

Plaintiff now seeks class certification for the following similarly-situated individuals, defined as:

> All individuals working for Loews in the State of Illinois who had their fingerprints collected, captured, received, or otherwise obtained or disclosed by any Defendant during the applicable statutory period.

Given Defendants' standard practices defined above and the straightforward and common legal questions presented in this case, Plaintiff now moves for class certification. Notably, this motion is being filed shortly after the Complaint was filed and before any Defendant has responded. The parties have not discussed settlement, neither settlement offers nor demands have been made, and a scheduling order has not been issued. For the reasons discussed herein, Plaintiff's request should be granted.

---

[1] BIPA does not require Plaintiff and the putative class to have suffered actual damages. Nonetheless, Plaintiff and the putative class have suffered an invasion of a legally protected interest when Defendants secured their personal and private biometric data at a time when it had no right to do so, an invasion of Plaintiff's and the putative Class's right to privacy; an informational injury because Defendants did not provide them with information to which they were entitled by statute; and mental anguish when contemplating what would happen to their biometric data if and when Defendants go out of business, whether Defendants will ever delete their biometric information, and whether (and to whom) Defendants share their biometric information.

5

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

## II.   STANDARD FOR CLASS CERTIFICATION

"The basic purpose of a class action is the efficiency and economy of litigation." *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App. (1st) 131465, ¶ 9 (Ill. App. Ct. May 8, 2015) (citing *Miner v. Gillette Co.*, 87 Ill. 2d 7, 14 (1981)). "In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true and should err in favor of maintaining class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (2007)). Under Section 2-801 of the Code of Civil Procedure, a class may be certified if the following four requirements are met:

(1) the class is so numerous that a joinder of all members is impracticable;

(2) there are questions of fact or law common to the class that predominate over any questions affecting only individual members;

(3) the representative parties will fairly and adequately protect the interest of the class; and

(4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

*See Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 447 (2006) (citing 735 ILCS 5/2-801). Notably, "[a] trial court has broad discretion in determining whether a proposed class meets the requirements for class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez*, 378 Ill. App. 3d at 53). Here, the allegations and facts in this case amply demonstrate that the four certification factors are met.

## III.   ARGUMENT

Plaintiff's claims here are especially suited for class certification because Defendants treated all employees who worked for them identically for the purposes of applying BIPA. All of the putative class members in this case were uniformly subjected to the same illegal and unlawful collection, storage, use, and dissemination of their biometric data that was required as a condition

6

of employment throughout the class period. Plaintiff meets each of the statutory requirements for maintenance of this suit as a class action. Thus, the class action device is ideally suited and is far superior to burdening the Court with many individual lawsuits to address the same issues, undertake the same discovery, and rely on the same testimony.

A.    **The Class Is So Numerous That Joinder of All Members Is Impracticable.**

Numerosity is not dependent on a plaintiff setting forth a precise number of class members or a listing of their names. *See Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 771 (2d Dist. 2008) ("Of course, plaintiffs need not demonstrate a precise figure for the class size, because a good-faith, non-speculative estimate will suffice; rather, plaintiffs need demonstrate only that the class is sufficiently numerous to make joinder of all of the members impracticable.") (internal citations omitted); *Hayna v. Arby's, Inc.*, 99 Ill. App. 3d 700, 710-11 (1st Dist. 1981) ("It is not necessary that the class representative name the specific individuals who are possibly members of the class."). Courts in Illinois generally find numerosity when the class is comprised of at least 40 members. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. Loan Ass'n*, 198 Ill. App. 3d 445, 450 (5th Dist. 1990).

In the present case, there can be no serious dispute that Plaintiff meets the numerosity requirement. The class of potential plaintiffs is sufficiently large to make joinder impracticable.[2] As a result of Defendants' violations of BIPA, Plaintiff and all similarly-situated individuals were subjected to Defendants' common and uniform policies and practices and were victims of Defendants' schemes to unlawfully collect, store, use, and disseminate their extremely personal and private biometric data in direct violation of BIPA. As a result of Defendants' violations of the

---

[2]    Upon information and belief, Loews employs hundreds of workers, many of whom are members of the class.

7

FILED DATE: 8/2/2018 3:35 PM    2018CH09477

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

Act, Plaintiff and all other similarly-situated individuals suffered an invasion of privacy as well as informational and personal injury. The precise number in the class cannot be determined until discovery records are obtained from Defendants. Nevertheless, class membership can be easily determined by reviewing Defendants' records. A review of Defendants' files regarding the collection, storage, use, and dissemination of employees' biometric data performed during the class period is all that is needed to determine membership in Plaintiff's proposed class. *See e.g., Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 233 (1st Dist. 2010) (reversing Circuit Court's denial of class certification and holding that class was certifiable over defendant's objection that "the proposed class was not ascertainable, because the process of reviewing defendant's transaction files to determine class membership would be burdensome"); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539-40 (6th Cir. 2012)[3] (rejecting the argument that manual review of files should defeat certification agreeing with district court's reasoning that, if manual review was a bar, "defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained," and citing numerous courts that are in agreement, including *Perez v. First Am. Title Ins. Co.*, 2009 WL 2486003, at *7 (D. Ariz. Aug. 12, 2009) ("Even if it takes a substantial amount of time to review files and determine who is eligible for the [denied] discount, that work can be done through discovery"). Once Defendants' records are obtained, the Court will know the precise number of persons affected.

Absent certification of this class action, Loews' employees may never know that their legal rights have been violated, and as a result, may never obtain the redress to which they are entitled

---

[3] "Section 2-801 is patterned after Rule 23 of the Federal Rules of Civil Procedure and, because of this close relationship between the state and federal provision, 'federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois.'" *Cruz*, 383 Ill. App. 3d at 761 (quoting *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill.2d 100, 125 (2005)).

8

under BIPA. Illinois courts have noted that denial of class certification where members of the putative class have no knowledge of the lawsuit may be the "equivalent of closing the door of justice" on the victims. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Assn.*, 198 Ill.App.3d 445, 452 (5th Dist. 1990). Further, recognizing the need to protect its citizens from harms such as identity theft, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. A class action would help ensure that Plaintiff and all other similarly-situated individuals have a means of redress against Defendants for its widespread violations of BIPA.

**B.     Common Questions Of Law And Fact Exist That Predominate Over Any Questions Solely Affecting Individual Members Of The Class.**

Courts analyze commonality and predominance under Section 2-801 by identifying the substantive issues that will control the outcome of the case. *See Bemis v. Safeco Ins. Co. of Am.*, 407 Ill. App. 3d 1164, 1167 (5th Dist. 2011); *Cruz*, 383 Ill. App. 3d at 773. The question then becomes whether those issues will predominate and whether they are common to the class, meaning that "favorable adjudication of the claims of the named plaintiffs will establish a right of recovery in other class members." *Cruz*, 383 Ill. App. 3d at 773. As stated by the Court of Appeals, the question is will "common . . . issues be the subject of the majority of the efforts of the litigants and the court[?]" *Bemis*, 407 Ill. App. 3d at 1168. The answer here is "yes."

At the heart of this litigation is Defendants' culpable conduct under BIPA. The issues are simple and straightforward legal questions that plainly lend themselves to class-wide resolution. Notwithstanding the clear and unequivocal requirements of the law, Defendants disregarded Plaintiff's and other similarly-situated individuals' statutorily-protected privacy rights and unlawfully collected, stored, used, and disseminated their biometric data in direct violation of BIPA. Specifically, Defendants have violated and continues to violate BIPA because it failed and

9

FILED DATE: 8/2/2018 3:35 PM    2018CH09477

continues to fail to: (1) inform Plaintiff or the putative class in writing of the specific purpose(s) and length of time for which their fingerprints were being collected, stored, used, and disseminated as required by BIPA; (2) provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the putative class's fingerprints, as required by BIPA; and (3) receive a written release from Plaintiff or the putative class to collect, capture, or otherwise obtain their fingerprints, as required by BIPA. Defendants treated the entire proposed class in precisely the same manner, resulting in identical violations of BIPA. These common practices create common issues of law and fact. In fact, the legality of Defendants' collection, storage, use, and dissemination of its employees' biometric data is the focus of this litigation.

Indeed, once this Court determines whether Defendants' practices of collecting, storing, and using individuals' biometric data without adhering to the specific requirements of BIPA constitutes violations thereof, liability for the claims of class members will be determined in one stroke. The material facts and issues of law are substantially the same for the members of the class, and therefore these common issues could be tried such that proof as to one claimant would be proof as to all members of the class. This alone establishes predominance. The only remaining questions will be whether Defendants' violations caused members of the class to suffer damages and the proper measure of damages and injunctive relief, which in and of themselves are questions common to the class. Accordingly, a favorable adjudication of the Plaintiff's claims in this case will establish a right of recovery to all other class members, and thus the commonality and predominance requirements weigh in favor of certification of the class.

C.  **The Named Plaintiff And Class Counsel Are Adequate Representatives Of The Class.**

When evaluating adequacy, courts look to whether the named plaintiff has the same interests as those of the class and whether he or she will fairly represent them. *See CE Design Ltd.*,

10

2015 IL App. (1st) 131465, ¶ 16. In this case, Plaintiff's interest arises from statute. The class representative, Tekita Bryant, is a member of the proposed class and will fairly and adequately protect the class's interests. Plaintiff, as a condition of employment, was required to have her fingerprints scanned for both accountability and time tracking purposes. Defendants subsequently stored Plaintiff's fingerprints in their database(s). Plaintiff has never been informed of the specific limited purposes (if any) or length of time for which any Defendant collected, stored, used, or disseminated her biometric data. Plaintiff has never been informed of any biometric data retention policy developed by any Defendant, nor has she ever been informed of whether any Defendant will ever permanently delete her fingerprints. Finally, Plaintiff has never been provided, nor did she ever sign, a written release allowing any Defendant to collect, store, use, or disseminate her fingerprints. Thus, Plaintiff was a victim of the same uniform policies and practices of Defendant as the individuals she seeks to represent and is not seeking any relief that is potentially antagonistic to other members of the class. What is more, Plaintiff has the interests of those class members in mind, as demonstrated by her willingness to sue on a class-wide basis and step forward as the class representative, which subjects her to discovery. (*See* Exhibit A – Affidavit of Tekita Bryant). This qualifies her as a conscientious representative plaintiff and satisfies the adequacy of representation requirement.

Proposed Class Counsel, Stephan Zouras, LLP, will also fairly and adequately represent the class. Proposed Class Counsel are highly qualified and experienced attorneys. (*See* Exhibit B – Affidavit of Haley R. Jenkins and the Firm Resume attached thereto as Exhibit 1). Stephan Zouras, LLP, are recognized attorneys in class action lawsuits and have been designated as class counsel in numerous class actions in state and federal courts. (*Id.*). Thus, proposed Class Counsel, too, are adequate and have the ability and resources to manage this lawsuit.

11

FILED DATE: 8/2/2018 3:35 PM    2018CH09477

**D.    A Class Action Is The Appropriate Method For Fair And Efficient Adjudication Of This Controversy.**

Finally, a class action is the most appropriate method for the fair and efficient adjudication of this controversy, rather than bringing individual suits which could result in inconsistent determinations and unjust results. "It is proper to allow a class action where a defendant is alleged to have acted wrongfully in the same basic manner toward an entire class." *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corporation*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004). "The purported class representative must establish that a successful adjudication of its individual claims will establish a right of recovery or resolve a central issue on behalf of the class members." *Id.*

Here, Plaintiff's claim stems from Defendants' common and uniform policies and practices, resulting in common violations of BIPA for all members of the class. Thus, class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. *Wenthold v. AT&T Technologies, Inc.*, 142 Ill. App. 3d 612 (1st Dist. 1986). Without a class, the Court would have to hear dozens, if not hundreds, of additional individual cases raising identical questions of liability. Moreover, class members are better served by pooling resources rather than attempting to litigate individually. *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶¶ 28-30 (certifying TCPA class where statutory damages were alleged and rejecting arguments that individual lawsuits would be superior). In the interests of justice and judicial efficiency, it is desirable to concentrate the litigation of all class members' claims in a single forum.  For all of these reasons, the class action is the most appropriate mechanism to adjudicate the claims in this case.

12

FILED DATE: 8/2/2018 3:35 PM  2018CH09477

**E.** **In The Event The Court Or Defendants Seeks More Factual Information Regarding This Motion, The Court Should Allow Supplemental And Deferred Briefing Following Discovery.**

There is no meaningful need for discovery for the Court to certify a class in this matter; Defendants' practices and policies are uniform. If, however, the Court wishes for the Parties to engage in discovery, the Court should keep the instant motion pending during the discovery period, allow Plaintiff a supplemental brief, and defer Defendants' response and Plaintiff's reply. Plaintiff is moving as early as possible for class certification in part to avoid the "buy-off problem," which occurs when a defendant seeks to settle with a class representative on individual terms in an effort to moot the class claims asserted by the class representative. Plaintiff is also moving for class certification now because the class should be certified, and because no meaningful discovery is necessary to establish that fact. The instant motion is far more than a placeholder or barebones memorandum. Rather, Plaintiff's full arguments are set forth based on the facts known at this extremely early stage of litigation. Should the Court wish for more detailed factual information, the briefing schedule should be extended.

## IV.    Conclusion

For the reasons stated above, Plaintiff respectfully requests that the Court enter an Order: (1) certifying Plaintiff's claims as a class action; (2) appointing Plaintiff Tekita Bryant as Class Representative; (3) appointing Stephan Zouras, LLP as Class Counsel; and (4) authorizing court-facilitated notice of this class action to the class. In the alternative, this Court should allow discovery, allow Plaintiff to supplement this briefing, and defer response and reply briefs.

Date:    August 2, 2018                                              Respectfully Submitted,

                                                                    /s/ Haley R. Jenkins _____
                                                                    Ryan F. Stephan
                                                                    James B. Zouras
                                                                    Haley R. Jenkins

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

**STEPHAN ZOURAS, LLP**
250 N. Michigan Avenue
Suite 2560
Chicago, Illinois 60601
312.233.1550
312.233.1560 *f*
Firm ID: 43734
hjenkins@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on August 2, 2018, I filed the attached with the Clerk

of the Court using the electronic filing system which will send such filing to all attorneys of

record.

*/s/ Haley R. Jenkins*

14

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

# Exhibit A

DocuSign Envelope ID: 465605F3-3F73-4581-AEE1-068A22611074

FILED DATE: 8/2/2018 3:35 PM 2018CH09477

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TEKITA BRYANT, individually,<br>and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOEWS CHICAGO HOTEL, INC., LOEWS<br>CORPORATION, and ADP LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 2018-CH-09477 |

## AFFIDAVIT OF TEKITA BRYANT

I, Tekita Bryant, being first duly cautioned, swear and affirm as follows:

1. I am over the age of 18 and competent to testify.

2. I am the Named Plaintiff and proposed Class Representative in this case.

3. I understand what it means to be a class representative. As a class representative, I am looking out for the interests of the other class members.

4. I do not have any conflicts with the class members because they were treated like I was with respect to this lawsuit. I have their interests in mind, as well as my own, in bringing this lawsuit.

FURTHER YOUR AFFIANT SAYETH NOT.

Date: 7/27/2018 _____

DocuSigned by:

_____
63EE604F819D457...
Tekita Bryant

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

# Exhibit B

FILED DATE: 8/2/2018 3:35 PM 2018CH09477

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TEKITA BRYANT, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOEWS CHICAGO HOTEL, INC., LOEWS CORPORATION, and ADP LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Case No.  2018-CH-09477<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### AFFIDAVIT OF HALEY R. JENKINS

I, Haley R. Jenkins, being first duly cautioned, swear and affirm as follows:

1. I am one of Plaintiff's Counsel in the above-referenced matter.

2. I submit this Affidavit in support of Plaintiff's Motion for Class Certification and Request for Discovery on Certification Issues.

3. I am an associate of the law firm of Stephan Zouras, LLP.  Attached hereto as Exhibit 1 is a true and correct copy of the firm's resume.

FURTHER YOUR AFFIANT SAYETH NOT.

Date: August 1, 2018

/s/ Haley R. Jenkins
Haley R. Jenkins

Subscribed and sworn to
before me on this 1st day of
August, 2018

Notary Public

ADRIANNA PARKER
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
January 03, 2022

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

# Exhibit 1 of Exhibit B



**ATTORNEYS AT LAW**

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

## FIRM PROFILE

**STEPHAN ZOURAS, LLP** is a law firm concentrating on helping people in class and individual civil litigation. The firm's attorneys have broad litigation, trial and appellate experience in the areas of wage and hour law and other employment disputes, mass torts and catastrophic personal injury, consumer protection, products liability and other complex litigation.

Our Chicago-based firm actively litigates cases in federal and state courts throughout the United States. The firm's two founding partners, James B. Zouras and Ryan F. Stephan, have successfully prosecuted claims ranging from individual wrongful death and other catastrophic injury cases to complex, multi-district class and collective actions on behalf of over one hundred thousand individuals against many of the largest corporations in the world.

## PRINCIPAL ATTORNEYS

**JAMES B. ZOURAS** is a founder and principal of Stephan Zouras, LLP. A 1995 graduate of DePaul University College of Law, Jim served as Editor of the Law Review, graduated in the top 10% of his class and was admitted to the Order of the Coif. Jim has helped thousands of people recover tens of millions of dollars in damages in individual and class actions arising under federal wage and hour laws including the Fair Labor Standards Act ("FLSA") and comparable state wage laws, other complex litigation, and catastrophic personal injury actions involving wrongful death, vehicle crashes, products liability, premises liability and construction negligence. Jim has been appointed lead or co-lead counsel on a large number of contested class actions throughout the United States. He has successfully tried over a dozen jury trials and argued over 14 appeals as lead appellate counsel before the federal and state appellate courts. In 2000, Jim was named among the *Chicago Daily Law Bulletin's* "Top 40 Lawyers Under Age 40," one of the youngest lawyers ever bestowed that honor. Jim and his cases have been profiled by numerous media outlets including the Chicago Tribune, the Chicago Sun-Times, Bloomberg BNA, Billboard Magazine and TMZ. Jim has also been interviewed by CBS Consumer Watch. Jim is frequently invited as a speaker at national class action litigation seminars.

**RYAN F. STEPHAN** is a founder and principal of Stephan Zouras, LLP. A 2000 graduate from Chicago Kent College of Law, Ryan has helped thousands of clients recover damages in cases involving unpaid overtime, employment disputes, business litigation, products liability and personal injury. Ryan has successfully tried cases to verdict including obtaining a $9,000,000 verdict on behalf of 200 employees who were misclassified and denied overtime pay. Ryan has also served as lead or co-lead counsel on numerous complex class and collective action cases involving wage and hour matters and has helped recover damages for tens of thousands of wronged employees. In these cases, Ryan has helped establish precedent in wage and hour law, forced major corporations to change unlawful employment practices and helped recover tens of millions of dollars in unpaid wages for his clients. Ryan and his cases have been profiled by numerous media outlets including Good Morning America, Fortune, ESPN, Fox News, The Guardian, The New York Times, Think Progress, USA Today and Vice Sports.

Ryan and Jim are admitted to the United States Supreme Court as well as the Trial Bar of the United States District Court for the Northern District of Illinois. In addition, they have been admitted or admitted *pro hac vice* to prosecute class actions in the Southern and Eastern Districts of New York, the District of New Jersey, the Eastern and Middle Districts of

C H I C A G O     •     P H I L A D E L P H I A     •     C H A R L O T T E

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

# STEPHANZOURAS LLP
## ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

Pennsylvania, the Western District of North Carolina, the Superior Court for the State of California, the Central District of Illinois, , the District of Minnesota the Eastern District of Michigan, the Eastern District of Missouri, the District of Maryland, the Southern District of Ohio, the Northern, Middle and Southern Districts of Florida, the Northern District of Texas, the District of Massachusetts, the District of Minnesota, the First Judicial District of Pennsylvania, the Western District of Washington and the Southern and Northern Districts of Iowa.

In every consecutive year since 2009, *Chicago Magazine's* Super Lawyer Section selected both Jim and Ryan as two of the top attorneys in Illinois, a distinction given to no more than 5% of the lawyers in the state.

## PARTNERS

**ANDREW C. FICZKO** graduated from Drake University Law School in 2009.  A tireless advocate for working people, Andy has spent his entire professional career litigating on behalf of employees in class and collective actions nationwide. Andy has helped thousands of clients recover damages in cases involving unpaid minimum and overtime wages and other benefits.  Andy served as the second chair in two major federal jury trials to verdict on behalf of Plaintiffs in wage and hour matters and one state jury trial to verdict on behalf of Plaintiffs in a breach of contract matter.

Andy has been admitted to the Trial Bar of the United States District Court for the Northern District of Illinois since December 2012 and has been admitted or admitted *pro hac vice* to the Southern District of New York, the Southern and Northern Districts of Iowa, District of Massachusetts, Eastern District of Pennsylvania, and the Western District of Washington.

In 2014, 2015, and 2016 Andy was recognized by Chicago Magazine's Super Lawyer section as a Rising Star, a distinction given to no more than 2.5% of Illinois lawyers.

**TERESA M. BECVAR** is a 2013 graduate of Chicago-Kent College of Law, where she served as Editor of the Law Review and graduated in the top 15% of her class. Teresa assists Stephan Zouras, LLP clients with employment and consumer protection issues. Teresa has experience working on a wide range of employment cases, including wage and hour class and collective actions and employment discrimination cases. Teresa has been admitted *pro hac vice* to the Eastern and Southern Districts of New York, the Western District of Washington, the Middle District of Florida and the Central District of California.

In 2016, Teresa was recognized by Chicago Magazine's Super Lawyer section as a Rising Star, a distinction given to no more than 2.5% of Illinois lawyers.

## ASSOCIATE ATTORNEYS

**CATHERINE T. MITCHELL** graduated from The John Marshall Law School in 2015. Catherine litigates on behalf of Stephan Zouras, LLP's clients in both class action and individual litigation, representing people in a wide-range of legal disputes, including unpaid wages, employee misclassification, mass torts, antitrust, and consumer fraud. Catherine is an active member of the Women's Bar Association of Illinois and the Young Lawyers Society of the Chicago Bar Association, and served as a Chapter Editor for the Second Edition of BNA's Age Discrimination in Employment Act Treatise. Catherine is admitted to practice in Illinois, the District of Colorado, the Eastern District of Wisconsin (admission pending) and has

C H I C A G O      •      P H I L A D E L P H I A      •      C H A R L O T T E

# STEPHANZOURAS
ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

been admitted *pro hac vice* to the Southern and Eastern District of New York, the District of Florida-Tampa Division, the Southern District of Iowa and the Eastern District of North Carolina.

**HALEY R. JENKINS** graduated *cum laude* from Chicago-Kent College of Law in 2016. Haley litigates on behalf of Stephan Zouras, LLP's clients in both class action and individual litigation. A spirited advocate, Haley represents clients in legal disputes involving unpaid wages, employee misclassification, antitrust, consumer fraud, whistleblower actions, and *qui tam* cases. She is currently a member of the legal team pursuing the first-ever lawsuit for minimum wage violations on behalf of the cheerleading squad of an NBA team. Haley is admitted to practice in Illinois and the District of Colorado and has been admitted *pro hac vice* to the Middle District of Pennsylvania.

## OF COUNSEL

**DAVID J. COHEN,** a highly skilled and successful class-action attorney, joined Stephan Zouras, LLP in April 2016 and manages our Philadelphia office.  Dave has spent 22 years fighting to protect the rights of thousands of employees, consumers, shareholders, and union members.  Before joining Stephan Zouras, Dave worked on, and ran, dozens of significant antitrust, consumer, employment and securities matters for four highly-regarded Philadelphia firms.  Before joining the private sector, Dave completed a unique clerkship with the Hon. Stephen E. Levin in the Philadelphia Court of Common Pleas, during which he not only helped to develop a respected and efficient system for the resolution of the Court's class action cases, but also contributed to several well-regarded works on class actions.  Dave earned a J.D. from the Temple University School of Law in 1994.  While attending law school, Dave was awarded the Barristers Award for excellence in trial advocacy and worked as a teaching assistant for Hon. Legrome Davis (E.D. Pa.) as part of Temple's award-winning Integrated Trial Advocacy program.  Dave graduated with honors from the University of Chicago in 1991.

Dave is admitted to practice in the United States Court of Appeals for the Third Circuit, the United States Court of Appeals for the Sixth Circuit, the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the Middle District of Pennsylvania, the United States District Court for the Western District of Pennsylvania, the United States District Court for the District of New Jersey and the state courts of Pennsylvania and New Jersey.  He is a member of the American and Philadelphia Bar Associations.

**PHILIP J. GIBBONS, JR.,** a highly-accomplished Plaintiff's class action attorney in his own right, joined Stephan Zouras, LLP in June 2017 and manages our Charlotte office.  Phil focuses entirely on employment law, with an emphasis on helping employees recover unpaid wages including overtime.  Phil began his legal career with a large national law firm, representing and counseling corporations and employers.  Since 2001, Phil has exclusively represented employees.  Phil is recognized by his peers as a highly skilled employment lawyer.  He is listed in Best Lawyers in America and Super Lawyers.  In addition, he has a perfect 10.0 rating on Avvo.com and an "A/V" rating with Martindale Hubble, which is the highest rating an attorney can receive.  Phil has extensive experience litigating single and multi-plaintiff wage and hour lawsuits under the Fair Labor Standards Act, recovering unpaid overtime and minimum wages for thousands of employees throughout the United States.

Phil is admitted to practice in North Carolina, Indiana, Seventh Circuit Court of Appeals, Sixth Circuit Court of Appeals, Third Circuit Court of Appeals, Tenth Circuit Court of Appeals, U.S. District Courts Western District North Carolina, Middle District North Carolina, Southern District of Indiana, Northern District of Indiana, and Eastern District of Michigan.



**STEPHANZOURAS** LLP
ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

## REPRESENTATIVE TRIALS, VERDICTS AND JUDGMENTS

**Franco, et al. v. Ideal Mortgage Bankers, d/b/a Lend America**      **12/14/17 – Trial Court Judgment**
*No. 07-cv-3956 (United States District Court for the Eastern District of New York)*
The Court entered a $15.2 million judgment on behalf of several hundred loan officers who were deprived of minimum wages and overtime in violation of federal and state law.

**Frisari v. DISH Network**      **8/25/16 – Arbitration Judgment**
*No. 18-160-001431-12 (AAA Arbitration)*
The Arbitrator certified and granted final judgment in excess of seven figures for a class of over 1,000 New Jersey inside sales associates who performed work before and/or after their shifts without pay and were not paid the proper overtime rate when they worked in excess of 40 hours a week.

**Huskey v. Ethicon Inc.**      **9/10/2014 – Jury Verdict**
*No. 2:12-cv-05201 (United States District Court for the Southern District of West Virginia)*
Stephan Zouras, LLP helped secure a $3,270,000.00 jury verdict in one of the bell-weather trial cases in the multi-district litigation against Johnson & Johnson's Ethicon unit for defective design, failure to warn and negligence related to transvaginal mesh device.

**Lee v. THR**      **5/22/14 – Trial Court Judgment**
*No. 12-cv-3078 (United States District Court for the Central District of Illinois)*
As a result of the efforts of class counsel Stephan Zouras, LLP, the Court entered a judgment for a class of employees given job titles such as "Buyers," "Auditors" and "Managers" for unpaid overtime in the sum of $12,207,880.84.

**Vilches et al. v. The Travelers Companies, Inc.**      **12/12/12 - Arbitration Judgment**
*No. 11-160-000355-11 (American Arbitration Association)*
Following a contested evidentiary hearing, Stephan Zouras, LLP secured a significant monetary award on behalf of a group of insurance appraiser employees seeking unpaid earned overtime under the FLSA.

**Kyriakoulis, at al. v. DuPage Health Center**      **11/8/12 – Jury Verdict**
*No. 10-cv-7902 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved a favorable jury verdict on behalf of several medical assistants deprived of minimum and overtime wages in violation of federal and Illinois law.

**Smith v. Safety-Kleen Systems, Inc.**      **7/11/12 - Jury Verdict**
*No. 10-cv-6574 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved a favorable jury verdict on behalf of a chemical handler deprived of overtime wages in this donning and doffing action brought under the FLSA.

**Wong v. Wice Logistics**      **1/30/12 - Jury Verdict**
*No. 08 L 13380 (Circuit Court of Cook County, Illinois)*
Stephan Zouras, LLP recovered unpaid commissions and other damages for Plaintiff based on her claims under the Illinois Wage Payment and Collection Act.

CHICAGO    •    PHILADELPHIA    •    CHARLOTTE

**STEPHANZOURAS LLP**
ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

**Daniels et al. v. Premium Capital Financing**                          **10/18/11 - Jury Verdict**
*No. 08-cv-4736 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP were appointed lead class and trial counsel and achieved a jury verdict in excess of $9,000,000.00 on behalf of over 200 loan officers who were deprived of minimum wages and overtime pay.

**Ferrand v. Lopas**                          **5/22/01 - Jury Verdict**
*No. 00 L 2502 (Circuit Court of Cook County, Law Division, State of Illinois)*
Jury verdict in excess of available liability insurance policy limits entered in favor of seriously-injured pedestrian, resulting in liability against insurance carrier for its bad faith refusal to tender the policy limits before trial.

## REPRESENTATIVE RESOLVED CLASS AND COLLECTIVE ACTIONS

**Courts have appointed the firm's partners as lead or co-lead counsel in numerous class and collective actions in which they achieved six, seven and eight-figure verdicts or settlements including:**

**Kaminski v. Bank of America, N.A.**                          **2/15/17 – Final Approval**
*No. 16-cv-10844 (United States District Court for the Northern District of Illinois)*
Final approval for class settlement in the amount of $850,000 in unpaid wages was granted and awarded to a class of approximately 100 employees working as Senior Specialist-Securities and Operation Market Professionals.

**Byrne v. Centegra Health System**                          **1/29/17 – Final Approval**
*No. 17-cv-00018 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of class settlement for $425,000 in unpaid overtime wages on behalf of registered nurses, physical therapists, occupational therapists, speech therapists and other similarly-designated skilled care positions who were misclassified as exempt under federal and state wage laws.

**Donoghue v. Verizon Communications, Inc.**                          **11/16/17 – Final Approval**
*No. 16-cv-4742 (United States District Court for the Eastern District of Pennsylvania)*
The Court granted final approval of class settlement for $800,0000 in unpaid overtime wages on behalf of wireline workers who were hired to fill in for Verizon employees during a strike. Despite regularly working 65 hours per week, these employees were classified as exempt and denied overtime wages.

**Tompkins v. Farmers Insurance Exchange**                          **9/27/17 – Final Approval**
*No. 14-cv-3737 (United States District Court for the Eastern District of Pennsylvania)*
The Court granted final approval of a $775,000.00 class settlement on behalf misclassified loan officers seeking unpaid overtime wages.

**In re Sears Holdings Corporation Stockholder and Derivative Litigation**                          **5/9/17 – Final Approval**
*No. 11081-VCL (Court of Chancery of the State of Delaware)*
Stephan Zouras, LLP represented the Named Plaintiff in a $40 million settlement in connection with a 2015 sale by Sears of 235 properties to Seritage Growth Properties.

**Oaks v. Sears**                          **4/12/17 – Final Approval**
*No. 1:15-cv-11318 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP settled on behalf of thousands of consumers who own or once owned Sears Kenmore grills in a product defect class action.

CHICAGO  •  PHILADELPHIA  •  CHARLOTTE

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

# STEPHANZOURAS LLP
ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

**Hauser v. Alexian Brothers Home Health**                     4/06/17 – Final Approval
*No. 15-cv-6462 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP settled for $1 million on behalf of home health care clinicians who were misclassified as "exempt" and deprived of earned overtime wages.

**Leiner v. Johnson & Johnson**                                1/31/17 – Final Approval
*No. 15-cv-5876 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of a $5 million settlement for consumers nationwide in a consumer fraud class action. Stephan Zouras, LLP represented consumers who were deceived into paying premium prices for Johnson & Johnson baby bedtime products which falsely claimed to help babies sleep better.

**McPhearson v. 33 Management**                                11/3/16 – Final Approval
*No. 15-ch-17302 (Circuit Court of Cook County, IL)*
The Court granted final approval of class settlement on behalf of tenants of a Chicago apartment building where the landlords violated the City of Chicago Residential Landlord and Tenant Ordinance by collecting and holding tenant security deposits without paying interest earned.

**Cook v. Bank of America**                                    8/2/16 – Final Approval
*No. 15-cv-07718 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of $3,250,000 settlement for an Illinois Class and FLSA Collective on behalf of individuals who worked as Treasury Services Advisors and who were misclassified as exempt from earned overtime wages.

**Altnor v. Preferred Freezer Services, Inc.**                 7/18/16 – Final Approval
*No. 14-cv-7042 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as lead counsel in this lawsuit seeking recovery of wages for unpaid meal break work for a class of 80 cold storage warehouse workers.

**Lukas v. Advocate Health Care**                              6/29/16 – Final Approval
*No. 14-cv-2740 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of a $4,750,000 settlement for a federal FLSA and Illinois Minimum Wage Law collective class of home health care clinicians who were wrongly classified as "exempt" from federal and state overtime laws.

**Kurgan v. Chiro One Wellness Centers LLC**                   4/27/16 – Final Approval
*No. 10-cv-1899 (United States District Court for the Northern District of Illinois)*
The Court granted Plaintiffs' motion for Section 216(b) certification of Plaintiffs' FLSA claim, granted Rule 23 certification of Plaintiffs' claims under the Illinois Minimum Wage Law and appointed Stephan Zouras, LLP as counsel for a class of chiropractic technicians and assistants.

**Heba v. Comcast**                                            4/6/16 – Final Approval
*No. 12-471 (First Judicial District of Pennsylvania Court of Common Pleas of Philadelphia)*
The Court granted class certification to Customer Account Executives who worked at Comcast's Pennsylvania call centers and were required to work 15 minutes a day before their scheduled start time without pay. As lead counsel, Stephan Zouras, LLP achieved a favorable resolution for over 6,000 class members.

**Johnson v. Casey's General Stores, Inc.**                    3/3/16 – Final Approval
*No. 15-cv-3086 (United States District Court for the Western District of Missouri)*
The Court granted final approval on behalf of a certified class of employees of Casey's General Stores, Inc. to redress violations of the Fair Credit Reporting Act (FCRA).

CHICAGO      •      PHILADELPHIA      •      CHARLOTTE

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

# STEPHANZOURAS, LLP
ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

**Fields v. Bancsource, Inc.**                                      **2/3/16 – Final Approval**
*No. 14-cv-7202 (United States District Court for the Northern District of Illinois)*
The Court entered an order granted Plaintiffs' motion for Section 216(b) certification of a class of field engineers who were deprived of overtime for hours worked in excess of 40 in given workweeks.

**Elder, et al. v. Comcast Corporation**                            **1/11/16 – Final Approval**
*No. 12-cv-1157 (United States District Court for the Northern District of Illinois)*
The Court granted Plaintiffs' motion for conditional certification and appointed Stephan Zouras, LLP as counsel for a class of cable technicians who allege they were deprived of overtime wages in violation of federal law.

**Posada, et al. v. Continental Home Loans, Inc.**                  **1/13/16 - Final Approval**
*15-cv-4203 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP was appointed class counsel and achieved a substantial settlement on behalf of a class of loan officers deprived of minimum and overtime wages.

**Struett v. Susquehanna Bank**                                     **10/27/15 – Final Approval**
*No. 15-cv-176 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as co-lead counsel in this lawsuit which recovered $300,000 in unpaid overtime wages for 31 misclassified loan officers.

**Faust, et al. v. Comcast Corporation**                            **10/11/15 - Final Approval**
*No. 10-cv-2336 (United States District Court for the Northern District of Maryland)*
The Court granted Plaintiffs' motion for conditional certification and appointed Stephan Zouras, LLP lead counsel for a class of call center employees.

**Butler, et al. v. Direct Sat**                                    **9/3/15 - Final Approval**
*No. 10-cv-08747 DKC (United States District Court for the District of Maryland)*
Stephan Zouras, LLP reached favorable resolution on behalf of a finally-certified collective class of technicians working in DirectSat's Maryland warehouses who were not paid overtime.

**Sosnicki v. Continental Home Loans, Inc.**                        **7/30/15 - Final Approval**
*No. 12-cv-1130 (United States District Court for the Eastern District of New York)*
As lead class counsel, Stephan Zouras, LLP achieved a six-figure settlement on behalf of a collective class of loan officers who were deprived of minimum wages and overtime in violation of federal and state law.

**Bordell v. Geisinger Medical Center**                             **4/8/15 – Final Approval**
*No. 12-cv-1688 (Northumberland Court of Common Pleas)*
The firm's attorneys served as lead counsel in this lawsuit which challenged Defendant's workweek averaging practices and recovered $499,000 in unpaid overtime wages for hospital workers.

**Harvey, et al. v. AB Electrolux, et al.**                         **3/23/15 – Final Approval**
*No. 11-cv-3036 (United States District Court for the Northern District of Iowa)*
As lead counsel, Stephan Zouras, LLP achieved a six-figure settlement amount on behalf of hundreds of production workers seeking unpaid earned wages.

**Price v. NCR Corporation**                                        **3/18/15 – Final Approval**
*No. 51-610-908-12 (AAA Arbitration)*
As lead class counsel, Stephan Zouras, LLP achieved a seven figure, arbitrator approved settlement on behalf of

**STEPHANZOURAS, LLP**
ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

thousands of Customer Engineers nationwide who were deprived overtime wages in violation of federal law.

**Frebes, et al. v. Mask Restaurants, LLC**                                      **1/15/15 – Final Approval**
*No. 13-cv-3473 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP was appointed class counsel and achieved a substantial settlement on behalf of hundreds of servers, bartenders and bussers forced to participate in an illegal "tip pool."

**Jones v. Judge Technical Services Inc.**                                       **12/15/14 – Final Approval**
*No. 11-cv-6910 (United States District Court for the Eastern District of Pennsylvania)*
As lead class counsel, Stephan Zouras, LLP prevailed on summary judgment and subsequently achieved a seven-figure settlement on behalf of IT workers who were designated under the "Professional Day" or "Professional Week" compensation plan, misclassified as exempt from the FLSA and denied overtime pay.

**Howard, et al. v. Securitas Security Services USA, Inc.**                       **5/7/14 – Final Approval**
*No. 08-cv-2746 (United States District Court for the Northern District of Illinois)*
**and Hawkins v. Securitas Security Services USA, Inc.**
*No. 09-cv-3633 (United States District Court for the Northern District of Illinois)*
For settlement purposes, the Court certified a class of approximately ten thousand security guards seeking damages for unpaid wages and overtime under the FLSA and Illinois Minimum Wage Law.

**Thomas v. Matrix Corporation Services**                                        **2/12/14 – Final Approval**
*No. 10-cv-5093 (United States District Court for the Northern District of Illinois)*
As lead counsel, Stephan Zouras, LLP achieved a six-figure settlement on behalf of a class of hundreds of technicians who allege they were deprived of overtime wages in violation of federal law.

**Ingram v. World Security Bureau**                                             12/17/13 – Final Approval
*No. 11-cv-6566 (United States District Court for the Northern District of Illinois)*
Stephan Zouras secured a class settlement on behalf of several hundred security officers deprived of minimum wages and overtime in violation of federal and state law.

**Sexton v. Franklin First Financial**                                          **9/30/13 – Final Approval**
*No. 08-cv-04950 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP achieved a settlement on behalf of a class of approximately 150 loan officers deprived of minimum wages and overtime in violation of the FLSA.

**Outlaw v. Secure Health, L.P.**                                               **9/24/13 – Final Approval**
*No. 11-cv-602 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as lead counsel in this lawsuit seeking recovery of wages for unpaid pre-shift, meal break and uniform maintenance work for a class of 35 nursing home workers.

**Robinson v. RCN Telecom Services, Inc.**                                      **8/5/13 – Final Approval**
*No. 10-cv-6841 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as co-lead counsel in this lawsuit which recovered $375,000 in unpaid overtime wages for misclassified cable television installers.

**Holland v. Securitas Security Services USA, Inc.**                            **7/26/13- Final Approval**
*No. BC 394708 (Superior Court of California, County of Los Angeles)*

C H I C A G O    •    P H I L A D E L P H I A    •    C H A R L O T T E

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

# STEPHANZOURAS LLP
## ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

As class counsel, Stephan Zouras, LLP achieved a six figure settlement on behalf of thousands of security officers who allege they were deprived of overtime wages in violation of federal law.

**Jankoski v. Heath Consultants, Inc.**                                      **7/2/13 - Final Approval**
*No. 12-cv-04549 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP was appointed lead counsel and achieved a settlement on behalf of gas management technicians deprived of minimum wages and overtime in violation of the FLSA.

**Ord v. First National Bank of Pennsylvania**                              **6/21/13 – Final Approval**
*No. 12-cv-766 (United States District Court for the Western District of Pennsylvania)*
The firm's attorneys served as co-lead counsel in this consumer fraud lawsuit which recovered $3,000,000 for consumers who had been made to pay improper overdraft fees.

**Holley v. Erickson Living Management, LLC**                               **6/13/13 – Final Approval**
*No. 11-cv-2444 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as lead counsel in this lawsuit seeking recovery of wages for unpaid pre-shift and meal break work for a class of 63 nursing home workers.

**Hansen, et al. v. Per Mar Security Services**                            **5/15/13 - Final Approval**
*No. 09-cv-459 (United States District Court for the Southern District of Iowa)*
Stephan Zouras, LLP was appointed class counsel and secured a settlement for hundreds of security guards deprived of minimum wages and overtime in violation of federal and state law.

**Pomphrett v. American Home Bank**                                        **3/14/13 – Final Approval**
*No. 12-cv-2511 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as co-lead counsel in this lawsuit which recovered $2,400,000 in unpaid overtime wages for misclassified loan officers.

**Murphy v. Rayan Brothers, et al.**                                       **2/22/13 - Final Approval**
*No. 11 CH 03949 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
Stephan Zouras, LLP achieved class wide recovery on behalf of a class of tenants for violations of the Chicago Residential Landlord and Tenant Ordinance (RLTO).

**Glatts v. Crozer-Keystone Health System**                               **2/6/13 – Final Approval**
*No. 0904-1314 (Philadelphia Court of Common Pleas)*
The firm's attorneys served as co-lead counsel in this lawsuit which challenged Defendant's workweek averaging practices and recovered $1,200,000 in unpaid overtime wages for hospital workers.

**Chambers v. Front Range Environmental, LLC**                            **1/23/13 - Final Approval**
*No. 12-cv-891 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP was appointed as class counsel and resolved this action on behalf of a class of maintenance workers.

**Piehl v. Baytree National Bank**                                         **1/3/13 - Final Approval**
*No. 12-cv-1364 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP was appointed class counsel and resolved this action on behalf of a class of Indiana loan officers

# STEPHANZOURAS, LLP
## ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

who were paid on a commission-only basis and deprived of earned minimum wage and overtime in violation of the FLSA.

**Searson v. Concord Mortgage Corporation**                    **11/19/12 - Final Approval**
*No. 07-cv-3909 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP achieved a settlement on behalf of a class of 80 loan officers deprived of minimum wages and overtime in violation of the FLSA.

**Ellenbecker, et al. v. North Star Cable Construction, Inc., et al.**          **11/14/12 - Final Approval**
*No. 09-cv-7293 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP obtained Rule 23 certification, were appointed lead counsel, and achieved a significant monetary resolution for a class of several hundred cable technicians seeking unpaid overtime wages and the recovery of improper deductions from their pay.

**Williams, et al. v. Securitas Security Services USA, Inc.**          **11/8/12 - Final Approval**
*No. 10-cv-7181 (United States District Court for the Eastern District of Pennsylvania)*
As lead class counsel, Stephan Zouras, LLP achieved a settlement on behalf of a class of Pennsylvania security guards who were not paid for all time spent in training and orientation.

**Lacy, et al. v. The University of Chicago Medical Center**          **11/6/12 – Final Approval**
*No. 11-cv-5268 (United States District Court for the Northern District of Illinois)*
As lead class counsel, Stephan Zouras, LLP achieved a FLSA settlement for a collective class of hospital respiratory therapists.

**Molyneux, et al. v. Securitas Security Services USA, Inc.**          **11/5/12 - Final Approval**
*No. 10-cv-588 (United States District Court for the Southern District of Iowa)*
As lead class counsel, Stephan Zouras achieved a settlement on behalf of a class of Iowa and Wisconsin security guards who were not paid for all time spent in training and orientation.

**Davis v. TPI Iowa, LLC**                    **9/6/12 - Final Approval**
*No. 11-cv-233 (United States District Court for the Southern District of Iowa)*
As class counsel, Stephan Zouras, LLP achieved a settlement on behalf of a collective class of production employees.

**Kernats, et al. v. Comcast Corporation**                    **5/28/12 - Final Approval**
*No. 09-cv-3368 (United States District Court for the Northern District of Illinois)*
As lead class counsel, Stephan Zouras, LLP achieved a seven-figure settlement on behalf of over 7,500 Customer Account Representatives (CAEs) for unpaid wages in a Rule 23 class action brought under Illinois wage law.

**Garcia, et al. v. Loffredo Fresh Produce Co., Inc.**          **5/24/12 - Final Approval**
*No. 11-cv-249 (United States District Court for the Southern District of Iowa)*
As class counsel, Stephan Zouras, LLP achieved a settlement on behalf of a collective class of produce processing employees.

**Larsen, et al. v. Clearchoice Mobility, Inc., et al.**          **3/21/12 - Final Approval**
*No. 11-cv-1701 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved an FLSA settlement on behalf of a collective class of retail sales consultants.

# STEPHANZOURAS LLP

ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

FILED DATE: 8/2/2018 3:35 PM  2018CH09477

**Etter v. Trinity Structural Towers**                    1/26/12 - Final Approval
*No. 11-cv-249 (United States District Court for the Southern District of Iowa)*
As class counsel, Stephan Zouras, LLP achieved a settlement on behalf of a collective class of production employees.

**Petersen, et al v. Marsh USA, Inc. et al.**                    9/21/11 - Final Approval
*No. 10-cv-1506 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved a six-figure settlement on behalf of over 30 analysts who claimed they were misclassified under the FLSA.

**Thompson v. World Alliance Financial Corp.**                    8/5/11 - Final Approval
*No. 08-cv-4951 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP were appointed lead counsel and achieved a settlement on behalf of a class of over one hundred loan officers deprived of minimum wages and overtime in violation of federal and state law.

**Vaughan v. Mortgage Source LLC, et al.**                    6/16/11 - Final Approval
*No. 08-cv-4737 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP were appointed lead counsel and achieved a settlement on behalf of a class of loan officers deprived of minimum wages and overtime in violation of federal and state law.

**Harris, et al. v. Cheddar's Casual Cafe, Inc.**                    6/1/11 - Final Approval
*No. 51 460 00557 10 (AAA Arbitration)*
Stephan Zouras served as lead counsel in six-figure class settlement on behalf of over 100 restaurant workers deprived of minimum wages and overtime.

**Turner v. Mercy Health System**                    4/20/11 – Final Approval
*No. 0801-3670 (Philadelphia Court of Common Pleas)*
The firm's attorneys served as co-lead counsel in this lawsuit which challenged Defendant's workweek averaging practices and, in a case of first impression, recovered $2,750,000 in unpaid overtime wages for hospital workers.

**Brown et al. v. Vision Works, et al.**                    3/4/11 - Final Approval
*No. 10-cv-01130 (United States District Court for the Northern District of Illinois)*
As lead class counsel, Stephan Zouras, LLP achieved a settlement on behalf of retail store managers improperly classified as exempt from overtime.

**Havard v. Osceola Foods, Inc., et al.**                    2/28/11 - Final Approval
*No. LA CV 0111290 (Iowa District for Clarke County, Iowa)*
As lead class counsel, Stephan Zouras, LLP achieved a class settlement on behalf of meat processing plant employees who were not properly paid for donning and doffing activities performed before their shifts, during meal breaks and after their shifts.

**Lagunas v. Cargill Meat Solutions Corp.**                    1/27/11 - Final Approval
*No. 10-cv-00220 (United States District Court for the Southern District of Iowa)*
Stephan Zouras, LLP served as co-lead counsel in class settlement on behalf of meat processing plant employees who were not properly paid for donning and doffing activities performed before their shifts, during meal breaks and after their shifts.

**Anderson v. JCG Industries, Inc.**                    9/2/10 - Final Approval
*No. 09-cv-1733 (United States District Court for the Northern District of Illinois)*

# STEPHANZOURAS LLP
## ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

As lead class counsel, Stephan Zouras, LLP achieved a six-figure settlement on behalf of meat processing plant employees who were not properly paid for time worked before their shifts, during meal breaks and after their shifts.

**Cedeno, et al. v. Home Mortgage Desk, Corp., et al.**                              **6/15/10 - Final Approval**
*No. 08-cv-1168 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP along with co-counsel was appointed lead counsel and achieved a six-figure settlement on behalf of a Section 216(b) collective class of loan officers deprived of overtime wages.

**Perkins, et al. v. Specialty Construction Brands, Inc.**                           **11/15/09 - Final Approval**
*No. 09-cv-1678 (United States District Court for the Northern District of Illinois)*
As lead class counsel, Stephan Zouras, LLP achieved a six-figure wage and hour settlement on behalf of a collective class of plant employees for claims of unpaid overtime, including time worked before the start of their shifts, during breaks and after the end of their shifts.

**Wineland, et al. v. Casey's General Stores, Inc.**                                 **10/22/09 - Final Approval**
*No. 08-cv-00020 (United States District Court for the Southern District of Iowa)*
Stephan Zouras, LLP along with co-counsel was appointed lead counsel and achieved a seven-figure settlement on behalf of a Section 216(b) collective class and Rule 23 class of over 10,000 cooks and cashiers for unpaid wages, including time worked before and after their scheduled shifts and while off-the-clock.

**Jones, et al. v. Casey's General Stores, Inc.**                                    **10/22/09 - Final Approval**
*No. 07-cv-400 (United States District Court for the Southern District of Iowa)*
Stephan Zouras, LLP along with co-counsel was appointed lead counsel and achieved a seven-figure settlement on behalf of a Section 2 I 6(b) collective class and Rule 23 class of assistant store managers for unpaid wages, including time worked before and after their scheduled shifts and while off-the-clock.

**Stuart, et al. v. College Park, et al.**                                          **12/11/07 - Final Approval**
*No. 05 CH 09699 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
The firm's partners served as co-lead counsel in this case brought on behalf of a class of tenants who were seeking the refund of their security deposits. As a result of their efforts, Mr. Stephan and Mr. Zouras helped achieve a six-figure settlement on behalf of a class of over 100 tenants.

**Huebner et al. v. Graham C Stores**                                               **11/15/07 - Final Approval**
*No. 06 CH 09695 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
Ryan Stephan of Stephan Zouras, LLP served as co-lead counsel in this wage and hour case involving claims for unpaid wages by a class of gas station employees. Mr. Stephan helped achieve a six-figure settlement for over 100 employees.

**Perez, et al. v. RadioShack Corporation**                                         **9/14/07 - Final Approval**
*No. 02-cv-7884 (United States District Court for Northern District of Illinois)*
The firm's partners served as co-lead counsel in this nationwide Fair Labor Standards Act ("FLSA") overtime action brought on behalf of 4,000 retail store managers. Plaintiffs claimed they were improperly classified as exempt from the FLSA and owed overtime compensation for all hours worked in excess of 40 each week. In a case of first impression, the Court granted summary judgment in favor of a sub-class of Plaintiffs who did not "regularly and customarily" supervise at least 80 hours of subordinate time per week at least 80% of the time as required by the executive exemption of the FLSA. The reported decision is *Perez v. RadioShack Corp.*, 386 F. Supp. 979 (N.D. Ill. 2005). As a result of the efforts of

# STEPHANZOURAS LLP
## ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

Plaintiffs' counsel, Plaintiffs obtained a nearly $9 million settlement on the eve of trial.

**Reinsmith, et al. v. Castlepoint Mortgage**                           4/3/07 - Final Approval
*No. 05-cv-01168 (United States District Court, Eastern District of Massachusetts)*
The firm's partners served as co-lead counsel in this action brought on behalf of a collective class of loan officers seeking to recover unpaid overtime. Mr. Stephan and Mr. Zouras helped achieve a seven-figure settlement on behalf of over 100 loan officers in this case.

**Kutcher, et al. v. B&A Associates**                           11/20/06 - Final Approval
*No. 03 CH 07610 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
The firm's partners served as co-lead counsel in this case brought on behalf of a class of tenants who were seeking damages based on alleged security deposit violations. As a result of their efforts, Mr. Stephan and Mr. Zouras helped achieve a six-figure settlement on behalf of a class of over 100 tenants.

**Ciesla, et al. v. Lucent Technologies, Inc.**                           7/31/06 - Final Approval
*No. 05-cv-1641 (United States District Court for the Northern District of Illinois)*
The firm's partners served as co-lead counsel in this breach of contract class action against a high-tech communications company. Mr. Stephan and Mr. Zouras helped obtain a seven-figure settlement on behalf of the class.

**Casale, et al. v. Provident Bank**                           7/25/05 - Final Approval
*No. 04-cv-2009 (United States District Court for the District of New Jersey)*
The firm's partners served as co-lead counsel in this case brought on behalf of a collective class of over 100 loan officers who were seeking damages based on wage and hour violations of the FLSA. As a result of their efforts, Mr. Stephan and Mr. Zouras helped achieve a seven-figure settlement on behalf of the Plaintiffs.

**Corbin, et al. v. Barry Realty**                           3/22/05 - Final Approval
*No. 02 CH 16003 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
The firm's partners served as co-lead counsel in this case brought on behalf of a class of tenants who were seeking the refund and interest on their security deposits as called for by the Chicago Residential Landlord Tenant Ordinance. As a result of their efforts, Mr. Stephan and Mr. Zouras helped achieve a six-figure settlement on behalf of a class of over 100 tenants.

## BIOMETRIC INFORMATION PRIVACY CLASS ACTION LAWSUITS

**Our firm is at the forefront of BIPA litigation to protect the biometric data and privacy of employees and consumers. We have brought numerous class action lawsuits against employers and other retail businesses who have collected biometric data without consent and without instituting the proper safeguards including;**

- **Doporcyk, et al. v. Mariano's**
  *No. 17-cv-05250 (United States District Court for the Northern District of Illinois)*
- **Dixon, et al. v. Smith Senior Living**
  *No. 17-cv-08033 (United States District Court for the Northern District of Illinois)*
- **Fields, et al. v. Abra Auto Body & Glass**
  *No. 17-CH-12271 (Circuit Court of Cook County, Chancery Division, State of Illinois)*

**STEPHANZOURAS** LLP
ATTORNEYS AT LAW

205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
P 312-233-1550 | F 312-233-1560
stephanzouras.com

- **Goings, et al. v. Applied Acoustics**
  *No. 17-CH-14954 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Liu, et al. v. Four Seasons**
  *No. 17-CH-14949 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Mims, et al. v. Hilton**
  *No. 17-CH-15781 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Morris, et al. v. Wow Bao**
  *No. 17-CH-12029 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Ogen, et al. v. Wyndham Hotels & Resorts**
  *No. 17-CH-15626 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Watts, et al. v. Chicago Lakeshore Hospital**
  *No. 17-cv-07713 (United States District Court for the Northern District of Illinois)*
- **Williams, et al. v. Rockford Tool**
  *No. 17-CH-000770 (Circuit Court of Winnebago County, Chancery Division, State of Illinois)*

FILED DATE: 8/2/2018 3:35 PM   2018CH09477

3



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**

**CASE NUMBER:** 2018CH09477   **SHERIFF NUMBER:** 02845966   **MULT. SER.:** 1   **DOC. TYPE:** CHAN

**DIE DATE:** 08/18/2018   **RECEIVED DATE:** 07/31/2018   **FILED DATE:** 07/26/2018   **DIST:** 604

| | |
|---|---|
| **DEFENDANT:** ADP LLC | **PLAINTIFF:** BRYANT, TEKITA |
| **ADDRESS:** 208 S LASALLE | **ATTORNEY:** STEPHAN ZOURAS LLP |
| **CITY:** CHICAGO | **ADDRESS:** 208 N MICHIGAN 2560 |
| **STATE:** IL   **ZIP CODE:** 60604 | **CITY:** CHICAGO |
| **ATTACHED FEE AMT:** | **STATE:** IL   **ZIP CODE:** 60601 |

**SERVICE INFORMATION:**   RM 802   CT CORPORATION SYSTEM

**I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:**

☐ **(1) PERSONAL SERVICE:** BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

☐ **(2) SUBSTITUTE SERVICE:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS. ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE DAY OF _ 20.

☐ **(3) UNKNOWN OCCUPANTS:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

☑ **(4) CORP/CO/BUS/PART:** BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION ____COMPANY____BUSINESS _____ PARTNERSHIP ___

☐ **(5) PROPERTY RECOVERED:** NO ONE PRESENT TO RECEIVE ORDER OF COURT. ORDER POSTED IN PLAIN VIEW.

☐ **(6) S.O.S/D.O.I.:** BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE. ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

☐ **(7) CERTIFIED MAIL**

**\*\*\*\* COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT \*\*\*\***

**(8)** AND BY MAILING ON THE ___ DAY OF _____ 20 _____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATON SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

**THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:**

| | | |
|---|---|---|
| ☐ (01) NO CONTACT | ☐ (05) WRONG ADDRESS | ☐ (09) DECEASED |
| ☐ (02) MOVED | ☐ (06) NO SUCH ADDRESS | ☐ (10) NO REGISTED AGENT |
| ☐ (03) EMPTY LOT | ☐ (07) EMPLOYER REFUSAL | ☐ (11) OUT OF COOK COUNTY |
| ☐ (04) NOT LISTED | ☐ (08) CANCELLED BY PLAINTIFF ATTY | ☐ (12) OTHER REASON (EXPLAIN) |

**EXPLANATION:**

**WRIT SERVED ON:**   K STARKS      ATTEMPTED SERVICES

**SEX:** F   **RACE:** BL   **AGE:** 40    Date    Time    Star #

**THIS** 03 **DAY OF** August 20 18

**TIME:** 11:50 AM

THOMAS J. DART,
SHERIFF, BY: /S/    THOMAS, JOSHUA D/S #11069      , DEPUTY



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**

**CASE NUMBER:** 2018CH09477    **SHERIFF NUMBER:** 02845966    **MULT. SER.:** 1    **DOC. TYPE:** CHAN
**DIE DATE:** 08/18/2018    **RECEIVED DATE:** 07/31/2018    **FILED DATE:** 07/26/2018    **DIST:** 604

| Date | Time | Star # |
| --- | --- | --- |



# ALBANY COUNTY SHERIFF'S OFFICE
County Court House Albany, New York 12207 (518) 487-5400
WWW.ALBANYCOUNTYSHERIFF.COM

## CRAIG D. APPLE, SR.
SHERIFF



**MICHAEL S. MONTELEONE**
UNDERSHERIFF

**KERRY B. THOMPSON**
CHIEF DEPUTY

**WILLIAM M. RICE**
CHIEF DEPUTY

**LEON A. BORMANN**
ACTING CHIEF DEPUTY

FILED DATE: 8/8/2018 10:29 AM 2018CH09477

COOK COUNTY CIRCUIT COURT

State of ILLINOIS

**CERTIFICATE OF SERVICE**
**CORPORATE SERVICE**

TEKITA BRYANT, ETAL

vs.

LOEWS CORPORATION

Index Number – 2018CH09477

Sheriff File Number – 18003388

I certify that I am an Albany County Deputy Sheriff and that I am not a party to the above-entitled action. I further certify that I made service of the within described papers upon LOEWS CORPORATION, the defendant in the following manner.

Papers Served: SUMMONS; CLASS ACTION COMPLAINT

Address Where
Service was Made
80 STATE STREET
C/O CORP SERVICE CO
ALBANY, NY 12207

FILED
8/8/2018 10:29 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09477

Date and Time
Of Service          8/3/2018 at 11:10 AM

CORPORATION

By delivering to and leaving with LITIGATION MANAGEMENT CSC the REPRESENTATIVE for the Defendant personally a true copy thereof.

STATUTORY FEE

At the time of service, a statutory fee of _____ was also left with the person mentioned and described herein.

DESCRIPTION        The person served was approximately: Skin Color: White, Hair Color: Blond, Gender: Female Height: 5' 4" Weight: 180 Age: 60 .

Dated:
Friday, August 03, 2018

JOHN LAWRENCE
DEPUTY SHERIFF

FILED DATE: 8/8/2018 10:29 AM   2018CH09477

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on August 8, 2018, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

/s/ Haley R. Jenkins

4

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

(12/30/15) CCL N530

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
8/15/2018 4:27 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09477

TEKITA BRYANT, individually, and on behalf of all others similarly situated,

Plaintiff

v.

LOEWS CHICAGO HOTEL, INC., LOEWS CORPORATION, and ADP, LLC,

Defendant

No. 2018-CH-09477

Calendar: 11

## APPEARANCE

☑ GENERAL APPEARANCE      0900 - APPEARANCE - FEE PAID;  0909 - APPEARANCE - NO FEE;
0904 - APPEARANCE FILED - FEE WAIVED

☐ JURY DEMAND      1900 - APPEARANCE & JURY DEMAND - FEE PAID
1909 - APPEARANCE & JURY DEMAND - NO FEE

The undersigned enters the appearance of:      ☐ Plaintiff    ☑ Defendant

LOEWS CORPORATION

(Insert litigant's name.)

/s/ Melissa A. Siebert
Signature

☑ INITIAL COUNSEL OF RECORD    ☐ PRO SE
☐ ADDITIONAL APPEARANCE      ☐ SUBSTITUTE APPEARANCE

A copy of this appearance shall be given to all parties who have appeared and have not been found by the Court to be in default.

☑ Atty. No.: 46365          ☐ Pro Se 99500
(Please complete the following contact information.)

Name: BAKER & HOSTETLER LLP

Atty. for: LOEWS CORPORATION

Address: 191 N Wacker Dr, Suite 3100

City/State/Zip: Chicago, IL  60606

Telephone: 312-416-6200

Primary Email: msiebert@bakerlaw.com

Secondary Email: mneubeck@bakerlaw.com

Tertiary Email: _____

**Pro Se Only:** ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

_____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

5

Order                        (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Bryant

v.

Loews Hotel of Chicago, et al

**ORDER**

No. 18 CH 09477

This matter coming to be heard on Plaintiff's motion for class certification, all parties present and the court being duly advised, it is so ordered:

Plaintiff's motion is entered and continued. All matters are continued to the previously set case management date of November 26, 2018 at 9:30 am.

Attorney No.: 43734
Name: Haley Jenkins
Atty. for: Plaintiff
Address: 205 N. Michigan #2560
City/State/Zip: Chicago IL 60601
Telephone: 312 233 1550

Judge Pamela McLean Meyerson

**ENTERED:** AUG 16 2018

Circuit Court – 2097

Dated: _____ , _____

Judge                       Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

6

FILED DATE: 8/21/2018 2:02 PM   2018CH09477

FILED
8/21/2018 2:02 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

2018CH09477



## SANGAMON COUNTY SHERIFFS OFFICE
*"Keeping the Peace Since 1821"*

*WES BARR*
#1 Sheriffs Plaza
Springfield, IL 62701

Administration - (217) 753-6855
Civil Process/Records - (217) 753-6846

Investigations - (217) 753-6840
Corrections - (217) 753-6886

I, ___T. Roderick___ certify that I served this summons as follows:

SG TRACKING #18- 5290

☐ Personal service on an individual, by leaving a copy of the summons and complaint with the defendant personally

☐ Abode service on an individual, by leaving a copy of the summons and complaint with a member of the household thirteen (13) years or older, informing said person of the contents thereof, and also by sending a copy of the summons, in a sealed envelope, postage paid, to the individual listed in the summons.

☒ Corporation service, by leaving a copy of the summons and complaint with an agent or officer of the corporation listed in the summons.

☐ Other service, as described below.

Case Number __18CH9477__

Name of defendant __Loews Chicago Hotel, Inc,__

Name of other person
Summons left with __Lyle Neuman__

Sex ( M̶ F ) Race __W__ Approx. age _____

Date of Service __8/7__ /2018 Time __9:40__

Date of Mailing _____

Address at which paper was served:
__801 Stevenson DR__
__SPFld IL__

**Service fees (Circle One)** __$42.00__ or $82.00

Circle One:     PAID     PAUPER     NO CHARGE

Wesley L. Barr, Sheriff of Sangamon County

By _____, Deputy # __3321__

IN PARTNERSHIP WITH THE COMMUNITY

FILED DATE: 8/21/2018 2:02 PM   2018CH09477

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on August 21, 2018, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

_/s/ Haley R. Jenkins_

7

FILED
9/19/2018 4:55 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

FILED DATE: 9/19/2018 4:55 PM   2018CH09477

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

TEKITA BRYANT, individually and on behalf of all others similarly situated, )
)
)
     Plaintiff, )
)
v. )
)
LOEWS CHICAGO HOTEL, INC., LOWES CORPORATION, and ADP LLC, )
)
)
)
     Defendants. )

Case No. 2018-ch-09477

Honorable Judge Pamela McLean Meyerson

## NOTICE OF CHANGE OF ADDRESS

PLEASE TAKE NOTICE that Stephan Zouras, LLP ("Stephan Zouras") notifies the Court and all counsel that, effective September 19, 2018, Stephan Zouras has relocated to the following address:

Stephan Zouras, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
T: (312) 233-1550

This Court and all parties are hereby instructed to make notice of this address change and send all notices, order, pleadings, and other correspondence regarding the captioned matter to the new address.

Dated: September 19, 2018

Respectfully submitted,

/s/ Ryan F. Stephan
One of the Attorneys for Plaintiffs
Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
Haley R. Jenkins
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com
hjenkins@stephanzouras.com
FIRM ID # 43734

FILED DATE: 9/19/2018 4:55 PM   2018CH09477

## <u>CERTIFICATE OF SERVICE</u>

I, the attorney, hereby certify that on September 19, 2018 I served a true and correct copy of the foregoing *Notice of Change of Address* by U.S. Mail and email, upon the following:

Melissa A. Siebert
BAKER & HOSTETLER LLP
191 N. Wacker Drive, Suite 3100
Chicago, Illinois 60606
msiebert@bakerlaw.com
*Attorney for Defendant Lowes*

_/s/ Ryan F. Stephan_____

2

8

CIRCUIT COURT OF COOK COUNTY
CHANCERY DIV., RM. 802 DALEY CTR.
CHICAGO, IL. 60602


ID: CH2018CH09477    20181015000009
TO: STEPHAN ZOURAS LLP
AT: KBOWERS@STEPHANZOURAS.COM

```
          * * * * *  N O T I C E  * * * * *
                CASE  18-CH-09477
                CALENDAR  11

     BRYANT TEKITA          V.        LOEWS CHICAGO HOTEL, INC.
     THERE WILL BE A CASE MANAGEMENT CALL OF YOUR CASE ON MONDAY
     THE 26TH DAY OF NOVEMBER 2018 IN ROOM 2305 AT  9:30 A.M.
     RICHARD J. DALEY CENTER, CHICAGO, IL. 60602.
     * * * *  YOU MUST APPEAR OR AN APPROPRIATE ORDER * * * *
     * * * *  MAY BE ENTERED AFFECTING YOUR RIGHTS  * * * *
     NOTE: IF THIS CASE HAS BEEN ALREADY DISMISSED OR IF THIS CASE
     HAS A COURT DATE SET BY COURT ORDER, YOU MAY DISREGARD THIS
                      NOTICE
```

9

Appearance                                                    (12/30/15) CCL N530

FILED
10/18/2018 5:34 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09477

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

TEKITA BRYANT,

                                              Plaintiff       No. 2018-CH-09477

                              v.                              Calendar: Judge Pamela McLean Meyerson

LOEWS CHICAGO HOTEL, INC., et al.,

                                              Defendant

# APPEARANCE

☑ GENERAL APPEARANCE          0900 - APPEARANCE - FEE PAID;  0909 - APPEARANCE - NO FEE;
                              0904 - APPEARANCE FILED - FEE WAIVED

☐ JURY DEMAND                 1900 - APPEARANCE & JURY DEMAND - FEE PAID
                              1909 - APPEARANCE & JURY DEMAND - NO FEE

The undersigned enters the appearance of:       ☐ Plaintiff    ☑ Defendant

ADP, LLC

(Insert litigant's name.)

                                              /s/ David C. Layden
                                              Signature

☑ INITIAL COUNSEL OF RECORD     ☐ PRO SE
☐ ADDITIONAL APPEARANCE         ☐ SUBSTITUTE APPEARANCE

A copy of this appearance shall be given to all parties who have appeared and have not been found by the Court to be in default.

☑ Atty. No.: 05003              ☐ Pro Se 99500

(Please complete the following contact information.)

Name: Jenner & Block LLP/David C. Layden

Atty. for: Defendant ADP, LLC

Address: 353 N. Clark Street

City/State/Zip: Chicago, IL 60654

Telephone: (312) 222-9350

Primary Email: dlayden@jenner.com

Secondary Email: _____

Tertiary Email: _____

**Pro Se Only:** ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Page 1 of 1

10

Order                                                          (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Tekita Bryant
v.

Loews Chicago Hotel + ADP, LLC,
Defendants.

No. 2018 CH 9477

Cel. 11

**ORDER**

This matter scheduled for status today, November 26, 2018, pursuant to agreement of all Parties, is continued in its entirety to February 21, 2019 at 10:15 am in Courtroom 2305.

Attorney No.: 43734
Name: Haley Jenkins
Atty. for: Plaintiff
Address: 100 N. Riverside, Ste. 2150
City/State/Zip: Chicago, IL. 60606
Telephone: (312) 233-1550

ENTERED
JUDGE SOPHIA H. HALL - 0162
NOV 26 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT

**ENTERED:**

Dated: 11/26/18

Judge                                              Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

11

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
1/25/2019 5:06 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09477

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **TEKITA BRYANT, individually,** and on behalf of all others similarly situated, ) ) ) | |
| **Plaintiff,** ) | **Case No. 2018-CH-09477** |
| **v.** ) ) | |
| **LOEWS CHICAGO HOTEL, INC., LOEWS CORPORATION, and ADP LLC,** ) ) ) | |
| **Defendants.** ) | |

<u>**NOTICE OF AUTHORITY**</u>

Please take notice that Plaintiff hereby submits the attached Illinois Supreme Court Opinion in *Rosenbach v. Six Flags Entertainment Corp.*, No. 123186 (Jan. 25, 2019), for the Court's consideration.

Date:   January 25, 2019

Respectfully Submitted,

*/s/ Haley R. Jenkins*
**ONE OF PLAINTIFF'S ATTORNEYS**

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
Haley R. Jenkins
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com
hjenkins@stephanzouras.com

FILED DATE: 1/25/2019 5:06 PM   2018CH09477

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on January 25, 2019 I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

*/s/ Haley R. Jenkins*

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
1/25/2019 5:06 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09477

FILED DATE: 1/25/2019 5:06 PM   2018CH09477

2019 IL 123186

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

———————————

(Docket No. 123186)

STACY ROSENBACH, as Mother and Next Friend of Alexander Rosenbach, Appellant, v. SIX FLAGS ENTERTAINMENT CORPORATION *et al.*, Appellees.

*Opinion filed January 25, 2019.*

CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, Garman, Burke, Theis, and Neville concurred in the judgment and opinion.

## OPINION

¶ 1    The Biometric Information Privacy Act (Act) (740 ILCS 14/1 *et seq.* (West 2016)) imposes numerous restrictions on how private entities collect, retain, disclose and destroy biometric identifiers, including retina or iris scans, fingerprints, voiceprints, scans of hand or face geometry, or biometric information. Under the Act, any person "aggrieved" by a violation of its provisions "shall have a

FILED DATE: 1/25/2019 5:06 PM   2018CH09477

right of action *** against an offending party" and "may recover for each violation" the greater of liquidated damages or actual damages, reasonable attorney fees and costs, and any other relief, including an injunction, that the court deems appropriate. *Id.* § 20. The central issue in this case, which reached the appellate court by means of a permissive interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016), is whether one qualifies as an "aggrieved" person and may seek liquidated damages and injunctive relief pursuant to the Act if he or she has not alleged some actual injury or adverse effect, beyond violation of his or her rights under the statute. The appellate court answered this question in the negative. In its view, "a plaintiff who alleges only a technical violation of the statute without alleging *some* injury or adverse effect is not an aggrieved person" within the meaning of the law. (Emphasis in original.) 2017 IL App (2d) 170317, ¶ 23. We granted leave to appeal (Ill. S. Ct. R. 315(a) (eff. Nov. 1, 2017)) and now reverse and remand to the circuit court for further proceedings.

¶ 2                                          BACKGROUND

¶ 3        The question the appellate court was asked to consider in this case arose in the context of a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)). We therefore take the following well-pleaded facts from the complaint and accept them as true for purposes of our review. *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11.

¶ 4        Six Flags Entertainment Corporation and its subsidiary Great America LLC own and operate the Six Flags Great America amusement park in Gurnee, Illinois. Defendants sell repeat-entry passes to the park. Since at least 2014, defendants have used a fingerprinting process when issuing those passes. As alleged by the complaint, their system "scans pass holders' fingerprints; collects, records and stores 'biometric' identifiers and information gleaned from the fingerprints; and then stores that data in order to quickly verify customer identities upon subsequent visits by having customers scan their fingerprints to enter the theme park." According to the complaint, "[t]his makes entry into the park faster and more seamless, maximizes the time pass holders are in the park spending money, and eliminates lost revenue due to fraud or park entry with someone else's pass."

- 2 -

FILED DATE: 1/25/2019 5:06 PM   2018CH09477

¶ 5        In May or June 2014, while the fingerprinting system was in operation, Stacy Rosenbach's 14-year-old son, Alexander, visited defendants' amusement park on a school field trip. In anticipation of that visit, Rosenbach had purchased a season pass for him online. Rosenbach paid for the pass and provided personal information about Alexander, but he had to complete the sign-up process in person once he arrived at the amusement park.

¶ 6        The process involved two steps. First, Alexander went to a security checkpoint, where he was asked to scan his thumb into defendants' biometric data capture system. After that, he was directed to a nearby administrative building, where he obtained a season pass card. The card and his thumbprint, when used together, enabled him to gain access as a season pass holder.

¶ 7        Upon returning home from defendants' amusement park, Alexander was asked by Rosenbach for the booklet or paperwork he had been given in connection with his new season pass. In response, Alexander advised her that defendants did "it all by fingerprint now" and that no paperwork had been provided.

¶ 8        The complaint alleges that this was the first time Rosenbach learned that Alexander's fingerprints were used as part of defendants' season pass system. Neither Alexander, who was a minor, nor Rosenbach, his mother, were informed in writing or in any other way of the specific purpose and length of term for which his fingerprint had been collected. Neither of them signed any written release regarding taking of the fingerprint, and neither of them consented in writing "to the collection, storage, use sale, lease, dissemination, disclosure, redisclosure, or trade of, or for [defendants] to otherwise profit from, Alexander's thumbprint or associated biometric identifiers or information."

¶ 9        The school field trip was Alexander's last visit to the amusement park. Although he has not returned there since, defendants have retained his biometric identifiers and information. They have not publicly disclosed what was done with the information or how long it will be kept, nor do they have any "written policy made available to the public that discloses [defendants'] retention schedule or guidelines for retaining and then permanently destroying biometric identifiers and biometric information."

¶ 10       In response to the foregoing events, Rosenbach, acting in her capacity as mother and next friend of Alexander (see 755 ILCS 5/11-13(d) (West 2016)), brought this action on his behalf in the circuit court of Lake County.[1] The action seeks redress for Alexander, individually and on behalf of all other similarly situated persons, under the Act (740 ILCS 14/1 *et seq.* (West 2016)), which, as noted at the outset of this opinion, provides that any person "aggrieved" by a violation of the Act's provisions "shall have a right of action *** against an offending party" and "may recover for each violation" the greater of liquidated damages or actual damages, reasonable attorney fees and costs, and any other relief, including an injunction, that the court deems appropriate (*id.* § 20).

¶ 11       The complaint, as amended, is in three counts. Count I seeks damages on the grounds that defendants violated section 15(b) of the Act (*id.* § 15(b)) by (1) collecting, capturing, storing, or obtaining biometric identifiers and biometric information from Alexander and other members of the proposed class without informing them or their legally authorized representatives in writing that the information was being collected or stored; (2) not informing them in writing of the specific purposes for which defendants were collecting the information or for how long they would keep and use it; and (3) not obtaining a written release executed by Alexander, his mother, or members of the class before collecting the information. Count II requests injunctive relief under the Act to compel defendants to make disclosures pursuant to the Act's requirements and to prohibit them from violating the Act going forward. Count III asserts a common-law action for unjust enrichment.

¶ 12       Defendants sought dismissal of Rosenbach's action under both sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2016)) in a combined motion filed pursuant to section 2-619.1 (*id.* § 2-619.1). As grounds for their motion, defendants asserted that one of the named defendants had no relation to the facts alleged, that plaintiff had suffered no actual or threatened injury and therefore

---

[1]Although Stacy Rosenbach has been referred to as the plaintiff in these proceedings, that is not technically accurate. Alexander is the plaintiff. Rosenbach is his next friend. A next friend of a minor is not a party to the litigation but simply represents the real party, who, as a minor, lacks capacity to sue in his or her own name. See *Blue v. People*, 223 Ill. App. 3d 594, 596 (1992). During oral argument, counsel for Rosenbach confirmed that she appears here solely on behalf of her son and asserts no claim for herself.

FILED DATE: 1/25/2019 5:06 PM   2018CH09477

lacked standing to sue, and that plaintiff's complaint failed to state a cause of action for violation of the Act or for unjust enrichment.

¶ 13     Following a hearing, and proceeding only under section 2-615 of the Code, the circuit court denied the motion as to counts I and II, which sought damages and injunctive relief under the Act, but granted the motion as to count III, the unjust enrichment claim, and dismissed that claim with prejudice.

¶ 14     Defendants sought interlocutory review of the circuit court's ruling under Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016) on the grounds that it involved a question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal might materially advance the ultimate termination of the litigation. The following two questions of law were identified by the circuit court:

> (1) "[w]hether an individual is an aggrieved person under §20 of the Illinois Biometric Information Privacy Act, 740 ILCS 14/20, and may seek statutory liquidated damages authorized under §20(l) of the Act when the only injury he alleges is a violation of §15(b) of the Act by a private entity who collected his biometric identifiers and/or biometric information without providing him the required disclosures and obtaining his written consent as required by §15(b) of the Act," and

> (2) "[w]hether an individual is an aggrieved person under §20 of the Illinois Biometric Information Privacy Act, 740 ILCS 14/20, and may seek injunctive relief authorized under §20(4) of the Act, when the only injury he alleges is a violation of §15(b) of the Act by a private entity who collected his biometric identifiers and/or biometric information without providing him the required disclosures and obtaining his written consent as required by §15(b) of the Act."

¶ 15     The appellate court granted review of the circuit court's order and answered both certified questions in the negative. In its view, a plaintiff is not "aggrieved" within the meaning of the Act and may not pursue either damages or injunctive relief under the Act based solely on a defendant's violation of the statute. Additional injury or adverse effect must be alleged. The injury or adverse effect need not be pecuniary, the appellate court held, but it must be more than a "technical violation of the Act." 2017 IL App (2d) 170317, ¶ 28.

- 5 -

FILED DATE: 1/25/2019 5:06 PM   2018CH09477

¶ 16        Rosenbach petitioned this court for leave to appeal. Ill. S. Ct. R. 315 (eff. Nov. 1, 2017). We allowed her petition and subsequently permitted friend of the court briefs to be filed in support of her position by the Electronic Privacy Information Center and by a consortium of groups including the American Civil Liberties Union, the Center for Democracy and Technology, and the Electronic Frontier Foundation. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). The court also permitted the Restaurant Law Center and Illinois Restaurant Association, the Internet Association, and the Illinois Chamber of Commerce to file friend of the court briefs in support of defendants.

¶ 17                                    ANALYSIS

¶ 18        Because this appeal concerns questions of law certified by the circuit court pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016), our review is *de novo. Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21. *De novo* review is also appropriate because the appeal arose in the context of an order denying a section 2-615 motion to dismiss (*Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006)) and its resolution turns on a question of statutory interpretation (*Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d 92, 96 (2003)).

¶ 19        The Biometric Privacy Information Act (740 ILCS 14/1 *et seq.* (West 2016)), on which counts I and II of Rosenbach's complaint are founded, was enacted in 2008 to help regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* § 5(g). The Act defines "biometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* § 10. "Biometric information" means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* It is undisputed that the thumbprint collected by defendants from Rosenbach's son, Alexander, when they processed his season pass constituted a biometric identifier subject to the Act's provisions and that the electronically stored version of his thumbprint constituted biometric information within the meaning of the law.

¶ 20        Section 15 of the Act (*id.* § 15) imposes on private entities such as defendants various obligations regarding the collection, retention, disclosure, and destruction of biometric indentifiers and biometric information. Among these is the following:

"(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." *Id.* § 15(b).

¶ 21    These provisions are enforceable through private rights of action. Specifically, section 20 of the Act provides that "[a]ny person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party." *Id.* § 20. Section 20 further provides that

"[a] prevailing party may recover for each violation:

(1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;

(2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;

(3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and

(4) other relief, including an injunction, as the State or federal court may deem appropriate." *Id.*

¶ 22    As noted earlier in this opinion, Rosenbach's complaint alleges that defendants violated the provisions of section 15 of the Act when it collected her son's

- 7 -

FILED DATE: 1/25/2019 5:06 PM   2018CH09477

thumbprint without first following the statutorily prescribed protocol. For the purposes of this appeal, the existence of those violations is not contested. The basis for defendants' current challenge is that no other type of injury or damage to Rosenbach's son has been alleged. Rosenbach seeks redress on her son's behalf and on behalf of a class of similarly situated individuals based solely on defendants' failure to comply with the statute's requirements. In defendants' view, that is not sufficient. They contend that an individual must have sustained some actual injury or harm, apart from the statutory violation itself, in order to sue under the Act. According to defendants, violation of the statute, without more, is not actionable.

¶ 23    While the appellate court in this case found defendants' argument persuasive, a different district of the appellate court subsequently rejected the identical argument in *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175. We reject it as well, as a recent federal district court decision correctly reasoned we might do. *In re Facebook Biometric Information Privacy Litigation*, 326 F.R.D. 535, 545-47 (N.D. Cal. 2018).

¶ 24    We begin our analysis with basic principles of statutory construction. When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. That intent is best determined from the plain and ordinary meaning of the language used in the statute. When the statutory language is plain and unambiguous, we may not depart from the law's terms by reading into it exceptions, limitations, or conditions the legislature did not express, nor may we add provisions not found in the law. *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 37-38 (2009).

¶ 25    Defendants read the Act as evincing an intention by the legislature to limit a plaintiff's right to bring a cause of action to circumstances where he or she has sustained some actual damage, beyond violation of the rights conferred by the statute, as the result of the defendant's conduct. This construction is untenable. When the General Assembly has wanted to impose such a requirement in other situations, it has made that intention clear. Section 10a(a) of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/10a(a) (West 2016)) is an example. To bring a private right of action under that law, actual damage to the plaintiff must be alleged. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002); *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018).

FILED DATE: 1/25/2019 5:06 PM   2018CH09477

¶ 26      In contrast is the AIDS Confidentiality Act (410 ILCS 305/1 *et seq.* (West 2016)). There, the legislature authorized private rights of action for monetary relief, attorney fees, and such other relief as the court may deem appropriate, including an injunction, by any person "aggrieved" by a violation of the statute or a regulation promulgated under the statute. *Id.* § 13. Proof of actual damages is not required in order to recover. *Doe v. Chand*, 335 Ill. App. 3d 809, 822 (2002).

¶ 27      Section 20 of the Act (740 ILCS 14/20 (West 2016)), the provision that creates the private right of action on which Rosenbach's cause of action is premised, clearly follows the latter model. In terms that parallel the AIDS Confidentiality Act, it provides simply that "[a]ny person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party." *Id.*

¶ 28      Admittedly, this parallel, while instructive (*Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25), is not dispositive. Separate acts with separate purposes need not, after all, define similar terms in the same way. Rather, " 'the same word may mean one thing in one statute and something different in another, dependent upon the connection in which the word is used, the object or purpose of the statute, and the consequences which probably will result from the proposed construction. [Citations.]' " *People v. Ligon*, 2016 IL 118023, ¶ 26 (quoting *Mack v. Seaman*, 113 Ill. App. 3d 151, 154 (1983)). Accepted principles of statutory construction, however, compel the conclusion that a person need not have sustained actual damage beyond violation of his or her rights under the Act in order to bring an action under it.

¶ 29      As with the AIDS Confidentiality Act, the Act does not contain its own definition of what it means to be "aggrieved" by a violation of the law. Where, as here, a statutory term is not defined, we assume the legislature intended for it to have its popularly understood meaning. Likewise, if a term has a settled legal meaning, the courts will normally infer that the legislature intended to incorporate that established meaning into the law. *People v. Johnson*, 2013 IL 114639, ¶ 9. Applying these canons of construction, it is clear that defendants' challenge to Rosenbach's right to bring suit on behalf of her son is meritless.

¶ 30      More than a century ago, our court held that to be aggrieved simply "means having a substantial grievance; a denial of some personal or property right." *Glos v.*

*People*, 259 Ill. 332, 340 (1913). A person who suffers actual damages as the result of the violation of his or her rights would meet this definition of course, but sustaining such damages is not necessary to qualify as "aggrieved." Rather, "[a] person is prejudiced or aggrieved, in the legal sense, when a legal right is invaded by the act complained of *or* his pecuniary interest is directly affected by the decree or judgment." (Emphasis added.) *Id.*

¶ 31    This understanding of the term has been repeated frequently by Illinois courts and was embedded in our jurisprudence when the Act was adopted. See *American Surety Co. v. Jones*, 384 Ill. 222, 229-30 (1943); *In re Estate of Hinshaw*, 19 Ill. App. 2d 239, 255 (1958); *In re Estate of Harmston*, 10 Ill. App. 3d 882, 885 (1973); *Greeling v. Abendroth*, 351 Ill. App. 3d 658, 662 (2004). We must presume that the legislature was aware of that precedent and acted accordingly. See *People v. Cole*, 2017 IL 120997, ¶ 30.

¶ 32    The foregoing understanding of the term is also consistent with standard definitions of "aggrieved" found in dictionaries, which we may consult when attempting to ascertain the plain and ordinary meaning of a statutory term where, as here, the term has not been specifically defined by the legislature. *In re M.I.*, 2016 IL 120232, ¶ 26. Merriam-Webster's Collegiate Dictionary, for example, defines aggrieved as "suffering from an infringement or denial of legal rights." Merriam-Webster's Collegiate Dictionary 25 (11th ed. 2006). Similarly, the leading definition given in Black's Law Dictionary is "having legal rights that are adversely affected." Black's Law Dictionary 77 (9th ed. 2009). This is therefore the meaning we believe the legislature intended here.

¶ 33    Based upon this construction, the appellate court's response to the certified questions was incorrect. Through the Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information. See *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 953 (N.D. Cal. 2018). The duties imposed on private entities by section 15 of the Act (740 ILCS 14/15 (West 2016)) regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right. Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person

- 10 -

FILED DATE: 1/25/2019 5:06 PM   2018CH09477

FILED DATE: 1/25/2019 5:06 PM    2018CH09477

or customer whose biometric identifier or biometric information is subject to the breach. Consistent with the authority cited above, such a person or customer would clearly be "aggrieved" within the meaning of section 20 of the Act (*id.* § 20) and entitled to seek recovery under that provision. No additional consequences need be pleaded or proved. The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action.

¶ 34    In reaching a contrary conclusion, the appellate court characterized violations of the law, standing alone, as merely "technical" in nature. 2017 IL App (2d) 170317, ¶ 23. Such a characterization, however, misapprehends the nature of the harm our legislature is attempting to combat through this legislation. The Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. *Patel*, 290 F. Supp. 3d at 953. These procedural protections "are particularly crucial in our digital world because technology now permits the wholesale collection and storage of an individual's unique biometric identifiers—identifiers that cannot be changed if compromised or misused." *Id.* at 954. When a private entity fails to adhere to the statutory procedures, as defendants are alleged to have done here, "the right of the individual to maintain [his or] her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized." *Id.* This is no mere "technicality." The injury is real and significant.

¶ 35    This construction of the law is supported by the General Assembly's stated assessment of the risks posed by the growing use of biometrics by businesses and the difficulty in providing meaningful recourse once a person's biometric identifiers or biometric information has been compromised. In enacting the law, the General Assembly expressly noted that

> "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5(c) (West 2016).

- 11 -

FILED DATE: 1/25/2019 5:06 PM   2018CH09477

The situation is particularly concerning, in the legislature's judgment, because "[t]he full ramifications of biometric technology are not fully known." *Id.* § 5(f).

¶ 36      The strategy adopted by the General Assembly through enactment of the Act is to try to head off such problems before they occur. It does this in two ways. The first is by imposing safeguards to insure that individuals' and customers' privacy rights in their biometric identifiers and biometric information are properly honored and protected to begin with, before they are or can be compromised. The second is by subjecting private entities who fail to follow the statute's requirements to substantial potential liability, including liquidated damages, injunctions, attorney fees, and litigation expenses "for each violation" of the law (*id.* § 20) whether or not actual damages, beyond violation of the law's provisions, can be shown.

¶ 37      The second of these two aspects of the law is as integral to implementation of the legislature's objectives as the first. Other than the private right of action authorized in section 20 of the Act, no other enforcement mechanism is available. It is clear that the legislature intended for this provision to have substantial force. When private entities face liability for failure to comply with the law's requirements without requiring affected individuals or customers to show some injury beyond violation of their statutory rights, those entities have the strongest possible incentive to conform to the law and prevent problems before they occur and cannot be undone. Compliance should not be difficult; whatever expenses a business might incur to meet the law's requirements are likely to be insignificant compared to the substantial and irreversible harm that could result if biometric identifiers and information are not properly safeguarded; and the public welfare, security, and safety will be advanced. That is the point of the law. To require individuals to wait until they have sustained some compensable injury beyond violation of their statutory rights before they may seek recourse, as defendants urge, would be completely antithetical to the Act's preventative and deterrent purposes.

¶ 38      In sum, defendants' contention that redress under the Act should be limited to those who can plead and prove that they sustained some actual injury or damage beyond infringement of the rights afforded them under the law would require that we disregard the commonly understood and accepted meaning of the term "aggrieved," depart from the plain and, we believe, unambiguous language of the

FILED DATE: 1/25/2019 5:06 PM  2018CH09477

law, read into the statute conditions or limitations the legislature did not express, and interpret the law in a way that is inconsistent with the objectives and purposes the legislature sought to achieve. That, of course, is something we may not and will not do. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994); *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 275 (2009).

¶ 39                                           CONCLUSION

¶ 40        For the foregoing reasons, we hold that the questions of law certified by the circuit court must be answered in the affirmative. Contrary to the appellate court's view, an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act. The judgment of the appellate court is therefore reversed, and the cause is remanded to the circuit court for further proceedings.

¶ 41        Certified questions answered.

¶ 42        Appellate court judgment reversed.

¶ 43        Cause remanded.

- 13 -

12

Order                                                          (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Tekita Bryant

v.                                          No.  2018 CH 9477

Loews Chicago Hotel et al.

### ORDER

This cause coming to be heard for status, due notice given and all parties appearing through counsel, it is hereby ORDERED:

① Defendants will answer or otherwise respond to the Complaint by April 5, 2019; and

② This case is set for further status on April 12, 2019 in courtroom 2305 at 10:15 a.m.

SO ORDERED.

Judge Pamela McLean Meyerson

FEB 21 2019

Circuit Court – 2097

Attorney No.: 46365

Name: Bonnie DelGobbo/Baker & Hostetler LLP          ENTERED:

Atty. for: Loews

Address: 191 N. Wacker Dr., Suite 3100

City/State/Zip: Chicago, IL 60606                    Dated: _____ , _____

Telephone: 312-416-6200

Judge                          Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

13

Return Date: No return date scheduled
Hearing Date: 4/16/2019 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED
4/5/2019 12:57 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09477

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **TEKITA BRYANT, individually, and on behalf of all others similarly situated,** ) ) ) | |
| **Plaintiff,** ) | **Case No. 2018-CH-09477** |
| ) | |
| **v.** ) ) | **Honorable Judge Pamela McLean Meyerson** |
| **LOEWS CHICAGO HOTEL, INC., LOWES CORPORATION, and ADP LLC,** ) ) ) | |
| **Defendants.** ) | |

<u>**NOTICE OF MOTION**</u>

PLEASE TAKE NOTICE that on <u>**Tuesday, April 16, 2019 at 9:30 a.m.**</u> or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Pamela McLean Meyerson, or any judge sitting in her stead, in the courtroom usually occupied by her at 50 West Washington, Chicago, Illinois, Room 2305, and present **PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT.**

Respectfully submitted,

*/s/ Haley R. Jenkins*
Haley R. Jenkins
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Telephone: 312-233-1550
hjenkins@stephanzouras.com

FILED DATE: 4/5/2019 12:57 PM 2018CH09477

FILED DATE: 4/5/2019 12:57 PM 2018CH09477

## CERTIFICATE OF SERVICE

I, an attorney, hereby certify that on April 5, 2019 a true and correct copy of the foregoing PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT was electronically filed via this Court's electronic filing system and will send notification of such filing to the listed attorneys of record.

*s/ Haley R. Jenkins*

2

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
4/5/2019 12:45 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09477

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| TEKITA BRYANT, individually, | ) | |
| and on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2018-CH-9477 |
| v. | ) | |
| | ) | |
| LOEWS CHICAGO HOTEL, INC., LOEWS | ) | |
| CORPORATION, and ADP LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Plaintiff Tekita Bryant, by and through counsel, moves this Honorable Court for leave to file Plaintiff's First Amended Complaint pursuant to the Illinois Rules of Civil Procedure, 735 ILCS 5/2-616. In support thereof, Plaintiff states as follows:

1.    On July 26, 2018, Plaintiff filed a Class Action Complaint seeking damages for Defendants' alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq. See* Class Action Complaint. In particular, Plaintiff alleged that Defendants unlawfully collect, store, and use employees' biometric data in violation of BIPA. *See generally, id.*

2.    Plaintiff seeks to amend her Complaint in order to add substantive allegations that will enhance her claims in light of the Illinois Supreme Court's decision in *Rosenbach v. Six Flags Ent. Corp.* 2019 IL 123186.

3.    Additionally, Plaintiff seeks to amend her Complaint in order to add an additional Defendant, Loews COH Operating Company, LLC.

1

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

4.      The Illinois Rules of Civil Procedure set forth a liberal policy for allowing a plaintiff to amend a complaint. *See* 735 ILCS 5/2-616.

5.      Defendants will not be prejudiced by Plaintiff filing an Amended Complaint.

6.      The interests of justice are served by allowing Plaintiff to amend her Complaint.

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court grant her leave to file her First Amended Complaint, attached hereto as Exhibit A.

Date:   April 5, 2019                              Respectfully Submitted,

*/s/ Haley R. Jenkins*
Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
Haley R. Jenkins
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
Firm ID: 43734
hjenkins@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com
rstephan@stephanzouras.com

2

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on April 5, 2019 I electronically filed the attached with the Clerk of the Court using the electronic filing system and will send such filing to all attorneys of record.

/s/ Haley R. Jenkins

3

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
4/5/2019 12:45 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09477

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

# EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| TEKITA BRYANT, individually, | ) | |
| and on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2018-CH-9477 |
| v. | ) | |
| | ) | |
| LOEWS CHICAGO HOTEL, INC., LOEWS | ) | JURY TRIAL DEMANDED |
| CORPORATION, LOEWS COH OPERATING | ) | |
| COMPANY, LLC and ADP LLC, | ) | |
| | ) | |
| Defendants. | | |

## FIRST AMENDED COMPLAINT

Plaintiff Tekita Bryant ("Bryant" or "Plaintiff"), by and through her attorneys, individually and on behalf of all others similarly situated (the "Class"), brings the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Loews Chicago Hotel, Inc. ("Loews Chicago"), Loews Corporation ("Loews Corp."), Loews COH Operating Company, LLC ("Loews COH") (collectively, "Loews"), and ADP LLC ("ADP") (together with Loews, "Defendants"), their subsidiaries and affiliates, to redress and curtail Defendants' unlawful collection, use, storage, and disclosure of Plaintiff's sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to herself, her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.     Defendant Loews is a luxury hospitality company that owns and operates twenty-five hotels in the United States and Canada, two of which are located in Illinois.

1

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

FILED DATE: 4/5/2019 12:45 PM 2018CH09477

2.      When Loews hires an employee, he or she is enrolled in its ADP employee database. Defendants use the employee database to monitor the time worked by Loews' hourly employees.

3.      While many employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Loews' employees are required to have their fingerprints scanned by a biometric timekeeping device.

4.      Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendants' – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

5.      Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee. This exposes Loews employees to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, and Facebook/Cambridge Analytica data breaches or misuses – employees have **_no_** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

6.      In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* https://www.opm.gov/cybersecurity/cybersecurity-incidents.

2

FILED DATE: 4/5/2019 12:45 PM  2018CH09477

7.     An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138. In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

8.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

9.     Notwithstanding the clear and unequivocal requirements of the law, each Defendant disregards Loews' employees' statutorily protected privacy rights and unlawfully collects, stores, disseminates, and uses their employees' biometric data in violation of BIPA. Specifically, each Defendant has violated and continue to violate BIPA because they did not and continue not to:

    a.  Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

    b.  Receive a written release from Plaintiff and others similarly situated to collect, store, or otherwise use their fingerprints, as required by BIPA;

3

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

    c.   Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprints, as required by BIPA; and

    d.   Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to a third party as required by BIPA.

10.    Accordingly, Plaintiff seeks an Order: (1) declaring that each Defendant's conduct violates BIPA; (2) requiring each Defendant to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

## PARTIES

11.    Plaintiff Tekita Bryant is a natural person and a citizen of the State of Illinois.

12.    Defendant Loews Chicago Hotel Inc., was a corporation existing under the laws of the State of Delaware during the statutory period, with its principle place of business in Chicago, Illinois. Loews was registered with the Illinois Secretary of State and conducted business in the State of Illinois, including Cook County, during the statutory period.

13.    Defendant Loews Corporation, the parent company of Loews Chicago Hotel, Inc., and Loews COH Operating Company, LLC is a corporation organized and existing under the laws of the State of Delaware, with its principle place of business in New York, New York. Loews Corp. is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

14.    Defendant Loews COH Operating Company, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principle place of business in New York, New York. Loews COH is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

4

15.     Defendant ADP LLC is a Delaware limited liability company that is registered to do business in Illinois.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because they conduct business transactions in Illinois, committed statutory violations and tortious acts in Illinois, and are registered to conduct business in Illinois.

17.     Venue is proper in Cook County because Defendants conduct business in Cook County and committed the statutory violations alleged herein in Cook County.

## FACTUAL BACKGROUND

### I.    The Biometric Information Privacy Act

18.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

19.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not

5

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

20.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5.

21.    Additionally, to ensure compliance, BIPA provides that, for <u>each</u> violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

22.    BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

      a.  Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

      b.  Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

      c.  Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS § 14/15(b).

23.    BIPA specifically applies to employees who work in the State of Illinois.  BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

6

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

24.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS § 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

25.     BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS § 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for such disclosure. *See* 740 ILCS § 14/15(d)(1).

26.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS § 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS § 14/15(a).

27.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

28.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

29.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## II.    Defendants Violate the Biometric Information Privacy Act.

30.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented with using individuals' biometric data stopped doing so.

31.     However, each Defendant failed to take note of the shift in Illinois law governing the collection, use and dissemination of biometric data. As a result, each Defendant continues to collect, store, use, and disseminate employees' biometric data in violation of BIPA.

32.     Specifically, when employees are hired by Loews, they are required to have their fingerprints scanned to enroll them in its ADP employee database(s).

33.     Loews uses an employee time tracking system supplied by ADP that requires employees to use their fingerprint as a means of authentication. Unlike a traditional timeclock, all Loews employees have to use their fingerprints to "punch" in and out of work.

34.     Upon information and belief, Loews and Loews COH failed and continue to fail to inform their employees that they disclose or disclosed their fingerprint data to Loews Corp.; failed and continue to fail to inform their employees that they disclose or disclosed their fingerprints to at least one out-of-state third-party vendor, ADP, and likely others; fail to inform their employees that they disclose their fingerprint data to other, currently unknown, third parties, which host the

8

FILED DATE: 4/5/2019 12:45 PM  2018CH09477

biometric data in their data centers; fail to inform its employees of the purposes and duration for which they collect sensitive biometric data; and fail to obtain written releases from employees before collecting their fingerprints.

35.     Upon information and belief, ADP failed and continues to fail to inform Loews employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform Loews employees of the purposes and duration for which it collects their sensitive biometric data; and fails to obtain written releases from Loews employees before collecting their fingerprints.

36.     Furthermore, each Defendant fails to provide Loews' employees with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

37.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why such conduct – where individuals are aware that they are providing a fingerprint but not aware to whom or for what purposes they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long. Each Defendant disregards these obligations and Loews' employees' statutory rights and instead unlawfully collects, stores, uses, and disseminates Loews' employees' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

38.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals'

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

biometric data and has not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with each company.

39.     Loews' employees are not told what might happen to their biometric data if and when any Defendant merges with another company or worse, if and when any Defendant's entire business folds, or when the other third parties that have received employees' biometric data businesses fold.

40.     Since no Defendant publishes a BIPA-mandated data-retention policy or discloses the purposes for their collection and use of biometric data, Loews' employees have no idea the extent to whom any Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Nor are Plaintiff and the putative Class told to whom any Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

41.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

42.     By and through the actions detailed above, each Defendant disregards Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**III.    Plaintiff Tekita Bryant's Experience**

43.     Plaintiff Tekita Bryant worked as a Star Service Agent at the Loews Hotel Chicago O'Hare location located at 5300 North River Road, Rosemont, Illinois, 60018. Bryant worked for Loews from January 2018 until July 2018.

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

44.     As a condition of employment, Bryant *was required* to scan her fingerprint so Loews could use it as an authentication method to track her time. Loews subsequently stored Plaintiff's fingerprint data in its ADP employee database(s).

45.     Plaintiff was required to scan her fingerprint each time she clocked in for work and clocked out of work.

46.     Plaintiff has never been informed of the specific limited purposes or length of time for which any Defendant collected, stored, used, and/or disseminated her biometric data.

47.     Plaintiff has never been informed of any biometric data retention policy developed by any Defendant, nor has she ever been informed of whether any Defendant will ever permanently delete her biometric data.

48.     Plaintiff has never been provided with nor ever signed a written release allowing any Defendant to collect, store, use, or disseminate her biometric data.

49.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' multiple violations of BIPA alleged herein.

50.     No amount of time or money can compensate Plaintiff if her biometric data is compromised by the lax procedures through which Defendants captured, stored, used, and disseminated her and other similarly-situated individuals' biometrics. Moreover, Plaintiff would not have provided her biometric data to Defendants if she had known that they would retain such information for an indefinite period of time without her consent.

51.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of her or her rights under the Act, in order

11

FILED DATE: 4/5/2019 12:45 PM  2018CH09477

to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

52.     As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, she seeks statutory damages under BIPA as compensation for the injuries caused by Defendants. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

53.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on her own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS § 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

54.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; **and** (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS § 14/15.

55.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 § ILCS 5/2-801 for the following class of similarly-situated individuals under BIPA:

> All individuals working for Defendants Loews, Loews Corp., and/or Loews COH in the State of Illinois who had their fingerprints collected, captured, received, obtained, maintained, stored, or disclosed by any Defendant during the applicable statutory period.

56.     This action is properly maintained as a class action under 735 ILCS § 5/2-801

because:

FILED DATE: 4/5/2019 12:45 PM    2018CH09477

A.    The class is so numerous that joinder of all members is impracticable;

B.    There are questions of law or fact that are common to the class;

C.    The claims of the Plaintiff are typical of the claims of the class; and,

D.    The Plaintiff will fairly and adequately protect the interests of the class.

### Numerosity

57.    The total number of putative class members exceeds fifty (50) individuals.  The exact number of class members can easily be determined from Lowes' payroll records.

### Commonality

58.    There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendants' failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

A.    Whether any Defendant collected, captured or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

B.    Whether any Defendant properly informed Plaintiff and the Class of their purposes for collecting, using, storing and disseminating their biometric identifiers or biometric information;

C.    Whether any Defendant obtained a written release (as defined in 740 ILCS § 14/10) to collect, use, store and disseminate Plaintiff's and the Class's biometric identifiers or biometric information;

D.    Whether any Defendant has disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information;

E.    Whether any Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

F.    Whether any Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been

13

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

satisfied or within three years of their last interaction with the individual, whichever occurs first;

G.      Whether any Defendant complies with any such written policy (if one exists);

H.      Whether any Defendant used Plaintiff's and the Class's fingerprints to identify them;

I.      Whether any Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

J.      Whether the violations of BIPA were committed negligently; and

K.      Whether the violations of BIPA were committed intentionally and/or recklessly.

59.      Plaintiff anticipates that Defendants will raise defenses that are common to the class.

## Adequacy

60.      Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## Typicality

61.      The claims asserted by Plaintiff are typical of the class members she seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

62.      Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can

14

FILED DATE: 4/5/2019 12:45 PM 2018CH09477

"opt out" of this action pursuant to 735 ILCS § 5/2-801.

### Predominance and Superiority

63.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

64.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

### FIRST CAUSE OF ACTION
#### Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule

65.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

15

FILED DATE: 4/5/2019 12:45 PM  2018CH09477

66.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

67.     Each Defendant fails to comply with these BIPA mandates.

68.     Defendant Loews Chicago Hotel Inc., was a Delaware corporation registered to do business in Illinois during the statutory period and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

69.     Defendant Loews Corporation, the parent company of Loews Chicago Hotel, Inc. and Loews COH Operating Company, LLC, is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

70.     Defendant Loews COH Operating Company, LLC is a Delaware limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

71.     Defendant ADP, LLC is a Delaware limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

72.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by each Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra. See* 740 ILCS § 14/10.

73.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

FILED DATE: 4/5/2019 12:45 PM 2018CH09477

74.     Each Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

75.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and have not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

76.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA  pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS  14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information

77.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.     BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject...in

17

FILED DATE: 4/5/2019 12:45 PM  2018CH09477

writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

79. Each Defendant fails to comply with these BIPA mandates.

80. Defendant Loews Chicago Hotel Inc., was a Delaware corporation registered to do business in Illinois during the statutory period and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

81. Defendant Loews Corporation, the parent company of Loews Chicago Hotel, Inc. and Loews COH Operating Company, LLC, is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

82. Defendant Loews COH Operating Company, LLC is a Delaware limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

83. Defendant ADP, LLC is a Delaware limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

84. Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

85. Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

FILED DATE: 4/5/2019 12:45 PM    2018CH09477

86.     Each Defendant systematically and automatically collected, used, stored and disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

87.     No Defendant ever informed Plaintiff and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, used and disseminated, nor did any Defendant inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

88.     By collecting, storing, using and disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

89.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA  pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3)

### THIRD CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent

90.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

91.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

92.     Each Defendant fails to comply with this BIPA mandate.

93.     Defendant Loews Chicago Hotel Inc., was a Delaware corporation registered to do business in Illinois during the statutory period and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

94.     Defendant Loews Corporation, the parent company of Loews Chicago Hotel, Inc. and Loews COH Operating Company, LLC, is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

95.     Defendant Loews COH Operating Company, LLC is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

96.     Defendant ADP, LLC is a Delaware limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

97.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by each Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

98.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

99.     Each Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

20

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

100.   By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

101.   On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for <u>each</u> intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for <u>each</u> negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Tekita Bryant respectfully requests that this Court enter an Order:

A.   Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Tekita Bryant as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.   Declaring that Defendants' actions, as set forth above, violate BIPA;

C.   Awarding statutory damages of $5,000 for *each* intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D.   Declaring that Defendants' actions, as set forth above, were intentional or reckless;

E.   Declaring that Defendants' actions, as set forth above, constitute negligence;

F.   Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendants to

collect, store, use, destroy and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

G.   Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

H.   Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

I.   Awarding such other and further relief as equity and justice may require.

Date:   April 5, 2019                            Respectfully Submitted,

                                                 /s/ Haley R. Jenkins
                                                 Ryan F. Stephan
                                                 James B. Zouras
                                                 Andrew C. Ficzko
                                                 Haley R. Jenkins
                                                 STEPHAN ZOURAS, LLP
                                                 100 N. Riverside Plaza
                                                 Suite 2150
                                                 Chicago, Illinois 60606
                                                 312.233.1550
                                                 312.233.1560 f
                                                 Firm ID: 43734
                                                 hjenkins@stephanzouras.com

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
4/5/2019 12:45 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09477

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

# EXHIBIT B

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| TEKITA BRYANT, individually,<br>and on behalf of all others similarly situated, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2018-CH-9477 |
| v. | ) | |
| | ) | |
| LOEWS CHICAGO HOTEL, INC., LOEWS | ) | Judge Pamela McLean Meyerson |
| CORPORATION, LOEWS COH OPERATING | ) | |
| COMPANY, LLC and ADP LLC, | ) | |
| | ) | |
| Defendants. | | |

## ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE
## FIRST AMENDED COMPLAINT

This matter coming to be heard on Plaintiff's Motion for Leave to File First Amended

Complaint, due notice having been given and the Court being duly advised on the premises, IT

IS SO ORDERED:

Plaintiff's Motion for Leave to File First Amended Complaint is GRANTED;

Defendants will answer or otherwise plead within 21 days hereof.

*Submitted by:*
Haley R. Jenkins
**STEPHAN ZOURAS, LLP**
100 North Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
Firm ID: 43734
hjenkins@stephanzouras.com

*Counsel for Plaintiff*

**ENTERED:**

Dated: _____

_____
Honorable Pamela McLean Meyerson

FILED DATE: 4/5/2019 12:45 PM   2018CH09477

14

Order                                                    (Rev. 02/24/05) CCG N002

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Bryant

v.

No. 18-CH-09477

Loews Hotel of Chicago,
et al.

ORDER

This matter coming to be heard on
Status, all parties present and the court
being fully advised, it is so ordered:
   Plaintiffs motion for leave to file an
amended complaint is granted;
   All defendants shall answer or otherwise
plead by 5/10/19;
   Status set for 5/22/19 at 10:15am;
   The hearing set for 4/16/19 is hereby stricken

Attorney No.: 43734
Name: Haley Jenkins
Atty. for: π
Address: 105 N. Riverside #2150
City/State/Zip: Chicago IL 60606
Telephone: 312-233-1550

ENTERED:   Judge Pamela McLean Meyerson

APR 12 2019

Dated:                    Circuit Court - 2097

Judge                                    Judge's No.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

15

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
4/12/2019 12:38 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09477

4670766

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| TEKITA BRYANT, individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) Case No. 2018-CH-9477 |
| LOEWS CHICAGO HOTEL, INC., LOEWS CORPORATION, LOEWS COH OPERATING COMPANY, LLC and ADP LLC, | ) JURY TRIAL DEMANDED ) ) ) |
| Defendants. | ) |

FILED DATE: 4/12/2019 12:38 PM   2018CH09477

### FIRST AMENDED COMPLAINT

Plaintiff Tekita Bryant ("Bryant" or "Plaintiff"), by and through her attorneys, individually and on behalf of all others similarly situated (the "Class"), brings the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Loews Chicago Hotel, Inc. ("Loews Chicago"), Loews Corporation ("Loews Corp."), Loews COH Operating Company, LLC ("Loews COH") (collectively, "Loews"), and ADP LLC ("ADP") (together with Loews, "Defendants"), their subsidiaries and affiliates, to redress and curtail Defendants' unlawful collection, use, storage, and disclosure of Plaintiff's sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to herself, her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.    Defendant Loews is a luxury hospitality company that owns and operates twenty-five hotels in the United States and Canada, two of which are located in Illinois.

1

FILED DATE: 4/12/2019 12:38 PM   2018CH09477

2.     When Loews hires an employee, he or she is enrolled in its ADP employee database. Defendants use the employee database to monitor the time worked by Loews' hourly employees.

3.     While many employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Loews' employees are required to have their fingerprints scanned by a biometric timekeeping device.

4.     Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendants' – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

5.     Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each employee. This exposes Loews employees to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, and Facebook/Cambridge Analytica data breaches or misuses – employees have _**no**_ means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

6.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* https://www.opm.gov/cybersecurity/cybersecurity-incidents.

FILED DATE: 4/12/2019 12:38 PM   2018CH09477

7.      An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138. In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

8.      Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

9.      Notwithstanding the clear and unequivocal requirements of the law, each Defendant disregards Loews' employees' statutorily protected privacy rights and unlawfully collects, stores, disseminates, and uses their employees' biometric data in violation of BIPA. Specifically, each Defendant has violated and continue to violate BIPA because they did not and continue not to:

     a.  Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by BIPA;

     b.  Receive a written release from Plaintiff and others similarly situated to collect, store, or otherwise use their fingerprints, as required by BIPA;

3

FILED DATE: 4/12/2019 12:38 PM   2018CH09477

c.  Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprints, as required by BIPA; and

d.  Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to a third party as required by BIPA.

10.   Accordingly, Plaintiff seeks an Order: (1) declaring that each Defendant's conduct violates BIPA; (2) requiring each Defendant to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

## PARTIES

11.   Plaintiff Tekita Bryant is a natural person and a citizen of the State of Illinois.

12.   Defendant Loews Chicago Hotel Inc., was a corporation existing under the laws of the State of Delaware during the statutory period, with its principle place of business in Chicago, Illinois. Loews was registered with the Illinois Secretary of State and conducted business in the State of Illinois, including Cook County, during the statutory period.

13.   Defendant Loews Corporation, the parent company of Loews Chicago Hotel, Inc., and Loews COH Operating Company, LLC is a corporation organized and existing under the laws of the State of Delaware, with its principle place of business in New York, New York. Loews Corp. is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

14.   Defendant Loews COH Operating Company, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principle place of business in New York, New York. Loews COH is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

4

15.     Defendant ADP LLC is a Delaware limited liability company that is registered to do business in Illinois.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because they conduct business transactions in Illinois, committed statutory violations and tortious acts in Illinois, and are registered to conduct business in Illinois.

17.     Venue is proper in Cook County because Defendants conduct business in Cook County and committed the statutory violations alleged herein in Cook County.

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act

18.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

19.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not

FILED DATE: 4/12/2019 12:38 PM   2018CH09477

FILED DATE: 4/12/2019 12:38 PM   2018CH09477

actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

20.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5.

21.     Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

22.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

     a.  Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

     b.  Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

     c.  Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS § 14/15(b).

23.     BIPA specifically applies to employees who work in the State of Illinois.  BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

6

FILED DATE: 4/12/2019 12:38 PM   2018CH09477

24.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS § 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

25.     BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS § 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for such disclosure. *See* 740 ILCS § 14/15(d)(1).

26.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS § 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS § 14/15(a).

27.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

28.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for

7

FILED DATE: 4/12/2019 12:38 PM   2018CH09477

which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

29.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## II.   Defendants Violate the Biometric Information Privacy Act.

30.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented with using individuals' biometric data stopped doing so.

31.     However, each Defendant failed to take note of the shift in Illinois law governing the collection, use and dissemination of biometric data. As a result, each Defendant continues to collect, store, use, and disseminate employees' biometric data in violation of BIPA.

32.     Specifically, when employees are hired by Loews, they are required to have their fingerprints scanned to enroll them in its ADP employee database(s).

33.     Loews uses an employee time tracking system supplied by ADP that requires employees to use their fingerprint as a means of authentication. Unlike a traditional timeclock, all Loews employees have to use their fingerprints to "punch" in and out of work.

34.     Upon information and belief, Loews and Loews COH failed and continue to fail to inform their employees that they disclose or disclosed their fingerprint data to Loews Corp.; failed and continue to fail to inform their employees that they disclose or disclosed their fingerprints to at least one out-of-state third-party vendor, ADP, and likely others; fail to inform their employees that they disclose their fingerprint data to other, currently unknown, third parties, which host the

8

biometric data in their data centers; fail to inform its employees of the purposes and duration for which they collect sensitive biometric data; and fail to obtain written releases from employees before collecting their fingerprints.

35.     Upon information and belief, ADP failed and continues to fail to inform Loews employees that it discloses their fingerprint data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform Loews employees of the purposes and duration for which it collects their sensitive biometric data; and fails to obtain written releases from Loews employees before collecting their fingerprints.

36.     Furthermore, each Defendant fails to provide Loews' employees with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

37.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why such conduct – where individuals are aware that they are providing a fingerprint but not aware to whom or for what purposes they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long. Each Defendant disregards these obligations and Loews' employees' statutory rights and instead unlawfully collects, stores, uses, and disseminates Loews' employees' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

38.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals'

FILED DATE: 4/12/2019 12:38 PM 2018CH09477

biometric data and has not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with each company.

39.     Loews' employees are not told what might happen to their biometric data if and when any Defendant merges with another company or worse, if and when any Defendant's entire business folds, or when the other third parties that have received employees' biometric data businesses fold.

40.     Since no Defendant publishes a BIPA-mandated data-retention policy or discloses the purposes for their collection and use of biometric data, Loews' employees have no idea the extent to whom any Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Nor are Plaintiff and the putative Class told to whom any Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

41.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

42.     By and through the actions detailed above, each Defendant disregards Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**III.    Plaintiff Tekita Bryant's Experience**

43.     Plaintiff Tekita Bryant worked as a Star Service Agent at the Loews Hotel Chicago O'Hare location located at 5300 North River Road, Rosemont, Illinois, 60018. Bryant worked for Loews from January 2018 until July 2018.

10

FILED DATE: 4/12/2019 12:38 PM   2018CH09477

44.     As a condition of employment, Bryant **was required** to scan her fingerprint so Loews could use it as an authentication method to track her time. Loews subsequently stored Plaintiff's fingerprint data in its ADP employee database(s).

45.     Plaintiff was required to scan her fingerprint each time she clocked in for work and clocked out of work.

46.     Plaintiff has never been informed of the specific limited purposes or length of time for which any Defendant collected, stored, used, and/or disseminated her biometric data.

47.     Plaintiff has never been informed of any biometric data retention policy developed by any Defendant, nor has she ever been informed of whether any Defendant will ever permanently delete her biometric data.

48.     Plaintiff has never been provided with nor ever signed a written release allowing any Defendant to collect, store, use, or disseminate her biometric data.

49.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' <u>multiple</u> violations of BIPA alleged herein.

50.     No amount of time or money can compensate Plaintiff if her biometric data is compromised by the lax procedures through which Defendants captured, stored, used, and disseminated her and other similarly-situated individuals' biometrics. Moreover, Plaintiff would not have provided her biometric data to Defendants if she had known that they would retain such information for an indefinite period of time without her consent.

51.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of her or her rights under the Act, in order

11

to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

52.     As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, she seeks statutory damages under BIPA as compensation for the injuries caused by Defendants. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

53.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on her own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS § 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

54.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS § 14/15.

55.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 § ILCS 5/2-801 for the following class of similarly-situated individuals under BIPA:

> All individuals working for Defendants Loews, Loews Corp., and/or Loews COH in the State of Illinois who had their fingerprints collected, captured, received, obtained, maintained, stored, or disclosed by any Defendant during the applicable statutory period.

56.     This action is properly maintained as a class action under 735 ILCS § 5/2-801

FILED DATE: 4/12/2019 12:38 PM   2018CH09477

because:

    A.    The class is so numerous that joinder of all members is impracticable;

    B.    There are questions of law or fact that are common to the class;

    C.    The claims of the Plaintiff are typical of the claims of the class; and,

    D.    The Plaintiff will fairly and adequately protect the interests of the class.

### Numerosity

57.    The total number of putative class members exceeds fifty (50) individuals. The exact number of class members can easily be determined from Lowes' payroll records.

### Commonality

58.    There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendants' failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

    A.    Whether any Defendant collected, captured or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

    B.    Whether any Defendant properly informed Plaintiff and the Class of their purposes for collecting, using, storing and disseminating their biometric identifiers or biometric information;

    C.    Whether any Defendant obtained a written release (as defined in 740 ILCS § 14/10) to collect, use, store and disseminate Plaintiff's and the Class's biometric identifiers or biometric information;

    D.    Whether any Defendant has disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information;

    E.    Whether any Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

    F.    Whether any Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been

FILED DATE: 4/12/2019 12:38 PM   2018CH09477

satisfied or within three years of their last interaction with the individual, whichever occurs first;

G.    Whether any Defendant complies with any such written policy (if one exists);

H.    Whether any Defendant used Plaintiff's and the Class's fingerprints to identify them;

I.     Whether any Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

J.     Whether the violations of BIPA were committed negligently; and

K.    Whether the violations of BIPA were committed intentionally and/or recklessly.

59.    Plaintiff anticipates that Defendants will raise defenses that are common to the class.

### Adequacy

60.    Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

### Typicality

61.    The claims asserted by Plaintiff are typical of the class members she seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

62.    Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can

14

FILED DATE: 4/12/2019 12:38 PM   2018CH09477

"opt out" of this action pursuant to 735 ILCS § 5/2-801.

<u>**Predominance and Superiority**</u>

63.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

64.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**<u>FIRST CAUSE OF ACTION</u>**
**Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule**

65.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

15

FILED DATE: 4/12/2019 12:38 PM   2018CH09477

66.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

67.     Each Defendant fails to comply with these BIPA mandates.

68.     Defendant Loews Chicago Hotel Inc., was a Delaware corporation registered to do business in Illinois during the statutory period and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

69.     Defendant Loews Corporation, the parent company of Loews Chicago Hotel, Inc. and Loews COH Operating Company, LLC, is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

70.     Defendant Loews COH Operating Company, LLC is a Delaware limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

71.     Defendant ADP, LLC is a Delaware limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

72.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by each Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra. See* 740 ILCS § 14/10.

73.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

FILED DATE: 4/12/2019 12:38 PM 2018CH09477

74.     Each Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

75.     Upon information and belief, each Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and have not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

76.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring each Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### SECOND CAUSE OF ACTION
**Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information**

77.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.     BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in

FILED DATE: 4/12/2019 12:38 PM 2018CH09477

writing that a biometric identifier or biometric information is being collected or stored; (2) informs

the subject…in writing of the specific purpose and length of term for which a biometric identifier

or biometric information is being collected, stored, and used; ***and*** (3) receives a written release

executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b)

(emphasis added).

79.     Each Defendant fails to comply with these BIPA mandates.

80.     Defendant Loews Chicago Hotel Inc., was a Delaware corporation registered to do

business in Illinois during the statutory period and thus qualifies as a "private entity" under BIPA.

*See* 740 ILCS 14/10.

81.     Defendant Loews Corporation, the parent company of Loews Chicago Hotel, Inc.

and Loews COH Operating Company, LLC, is a Delaware corporation registered to do business

in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

82.     Defendant Loews COH Operating Company, LLC is a Delaware limited liability

company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA.

*See* 740 ILCS 14/10.

83.     Defendant ADP, LLC is a Delaware limited liability company registered to do

business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

84.     Plaintiff and the Class are individuals who have had their "biometric identifiers"

collected by Defendants (in the form of their fingerprints), as explained in detail in Sections II and

III, *supra*. *See* 740 ILCS § 14/10.

85.     Plaintiff's and the Class's biometric identifiers were used to identify them and,

therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

18

FILED DATE: 4/12/2019 12:38 PM 2018CH09477

86.     Each Defendant systematically and automatically collected, used, stored and disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

87.     No Defendant ever informed Plaintiff and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, used and disseminated, nor did any Defendant inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

88.     By collecting, storing, using and disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

89.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3)

### THIRD CAUSE OF ACTION
**Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent**

90.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

19

FILED DATE: 4/12/2019 12:38 PM 2018CH09477

91.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

92.     Each Defendant fails to comply with this BIPA mandate.

93.     Defendant Loews Chicago Hotel Inc., was a Delaware corporation registered to do business in Illinois during the statutory period and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

94.     Defendant Loews Corporation, the parent company of Loews Chicago Hotel, Inc. and Loews COH Operating Company, LLC, is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

95.     Defendant Loews COH Operating Company, LLC is a Delaware corporation registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

96.     Defendant ADP, LLC is a Delaware limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

97.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by each Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

98.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

99.     Each Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

FILED DATE: 4/12/2019 12:38 PM    2018CH09477

100.    By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

101.    On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Tekita Bryant respectfully requests that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Tekita Bryant as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.    Declaring that Defendants' actions, as set forth above, violate BIPA;

C.    Awarding statutory damages of $5,000 for *each* intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D.    Declaring that Defendants' actions, as set forth above, were intentional or reckless;

E.    Declaring that Defendants' actions, as set forth above, constitute negligence;

F.    Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendants to

21

FILED DATE: 4/12/2019 12:38 PM 2018CH09477

collect, store, use, destroy and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

G.     Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

H.     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

I.     Awarding such other and further relief as equity and justice may require.


Date:  April 12, 2019                       Respectfully Submitted,

                                             */s/ Haley R. Jenkins*
                                             Ryan F. Stephan
                                             James B. Zouras
                                             Andrew C. Ficzko
                                             Haley R. Jenkins
                                             **STEPHAN ZOURAS, LLP**
                                             100 N. Riverside Plaza
                                             Suite 2150
                                             Chicago, Illinois 60606
                                             312.233.1550
                                             312.233.1560 *f*
                                             Firm ID: 43734
                                             hjenkins@stephanzouras.com

22

FILED DATE: 4/12/2019 12:38 PM   2018CH09477

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on April 12, 2019, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

*/s/ Haley R. Jenkins*