**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **TEKITA BRYANT, individually and on behalf of all others similarly situated,** )<br>)<br>) | |
| **Plaintiff,** )<br>) | **Case No. 1:19-cv-03195** |
| **v.** )<br>) | **Hon. Charles R. Norgle, Sr.** |
| **LOEWS CHICAGO HOTEL, INC., LOEWS CORPORATION, LOEWS COH OPERATING COMPANY, LLC,** )<br>)<br>)<br>) | |
| **Defendants.** )<br>) | |

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**INTRODUCTION**

Plaintiff and Class Representative Tekita Bryant ("Named Plaintiff"), individually and on behalf of a class of 1,216 other employees certified for settlement purposes (collectively, "Plaintiffs" or "Class Members") by and through undersigned counsel, moves for final approval of the Parties' settlement of Plaintiffs' claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. The Parties' settlement of this Rule 23 class action is fair, reasonable, and adequate under the governing legal standards and satisfies all of the criteria for final approval. Plaintiff respectfully requests the Court: (1) grant final approval of the Amended Class Action Settlement Agreement ("Amended Settlement Agreement"), attached as Exhibit A, including the releases of claims as set forth therein; and (2) enter the Proposed Final Approval Order and Final Judgment, attached as Exhibit B.

On August 4, 2020, the Court took the first step in the settlement approval process by preliminary approving the Parties' Amended Class Action Settlement; certifying the proposed

"Settlement Class" (as defined below) pursuant to Rule 23; appointing the attorneys from Stephan Zouras, LLP as Class Counsel; appointing Rust Consulting ("Settlement Administrator") as Settlement Administrator; appointing Named Plaintiff Tekita Bryant as Class Representative; directing that the Settlement Administrator mail notice to the Class members; and setting a date for the Final Approval Hearing. (D.E. 71.)

Class Members have been notified of the terms of the settlement, including the monetary relief, the allocation formula, and their right to participate in, object to, or opt out of the settlement. Exhibit C, Decl. of Jennifer Mills for Rust Consulting, Inc. ("Admin. Decl. ¶ 8); *see also* Ex. A to Admin. Decl. ("Class Notice"). To date, no Class Members have objected to the settlement and only six opted out of the settlement. (Admin. Decl. ¶¶ 12-13; Exhibit D, Decl. of Ryan F. Stephan ("Stephan Decl.") ¶ 13.) With such overwhelming support for the settlement and for the reasons stated below, the Court should grant final approval.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

As set forth in greater detail in Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (D.E. 67), Named Plaintiff Tekita Bryant filed the above-captioned class action in the Circuit Court of Cook County on July 26, 2018, alleging that Defendants utilize biometric timekeeping devices at their facilities in Illinois and require their employees to use the devices when clocking in and clocking out of work. Plaintiff moved for leave to amend her Complaint to add Loews COH Operating Company, LLC as a defendant on April 5, 2019. Plaintiff's motion was granted on April 12, 2019, and Plaintiff filed the operative First Amended Class Action Complaint in the Circuit Court of Cook County on April 12, 2019. On May 10, 2019, Defendant Loews COH Operating Company, LLC, filed a Notice of Removal in the United States District Court for the Northern District of Illinois (D.E. 1), where it was assigned to and remains

pending before the Hon. Charles R. Norgle, Sr. Loews moved to dismiss Plaintiff's First Amended Complaint on May 24, 2019 (D.E. 13), and the motion was fully briefed on November 8, 2019.

On December 5, 2019, Counsel for all Parties participated in an all-day mediation at JAMS in Chicago, Illinois with Hon. Morton Denlow (Ret.), who possesses significant expertise in class settlements. Though the Action did not settle at mediation, Counsel for the Parties continued to engage in settlement negotiations with the help of Judge Denlow through the spring of 2020, ultimately reaching an agreement in principle on May 29, 2020. These extensive negotiations culminated in a settlement agreement, fully executed on July 21, 2020, and later in the operative Amended Settlement Agreement, fully executed on July 31, 2020.

On July 21, 2020, Plaintiff filed the Unopposed Motion for Preliminary Approval of Class Action Settlement. On July 31, 2020, Plaintiff filed the Unopposed Motion for Leave to Amend Class Action Settlement Agreement requesting, among other relief, that the Court grant preliminary approval of the Amended Settlement Agreement and certify a Rule 23 class for settlement purposes. (D.E. 67.) On August 4, 2020, the Court granted Preliminary Approval of the Amended Settlement Agreement. (D.E. 71.)

## II. SUMMARY OF SETTLEMENT TERMS

### A. The Settlement Fund

Per the terms of the Amended Settlement Agreement, Defendants or their insurers will pay to the Settlement Administrator the total sum of $1,036,396.48.[1] (Exhibit A ¶¶ 34, 41(a).) The Settlement Fund shall be used to pay (i) Settlement Class Members' claims; (ii) a Service Award

---

[1] The Amended Settlement Agreement contemplated a Settlement Fund of $1,050,000.00 based upon a class of 1,244 individuals, 422 of whom were categorized as union members and 804 of whom were categorized as non-union members. After removing duplicate entries from the class list, the final class size is 1,216, 424 of whom are union members and 792 of whom are non-union members. (Stephan Decl. ¶ 10.)

to the Class Representative ($10,000.00); (iii) the Fee Award (not to exceed 33.3% of the Settlement Fund); and (iv) the Administrative Expenses (not to exceed $30,000.00). (*Id*. ¶ 41(d).)

### B.   Eligible Class Members

Class Members who are eligible to receive a settlement payment are all individuals performing work at Defendants Loews Corporation; Loews COH Operating Company, LLC; Loews Chicago Hotel, Inc.; and/or Loews Chicago Operating Company, LLC ("Defendants") in the State of Illinois who had any information that allegedly could be covered under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.,* collected, captured, received, obtained, maintained, stored, transmitted, or disclosed by any Defendant within the five-year period preceding the date the Complaint was filed through December 10, 2018 for persons who worked at the Loews Chicago Downtown Hotel; January 7, 2019 for union employees at the Loews Chicago O'Hare Hotel; and February 22, 2019 for non-union employees at the Loews Chicago O'Hare Hotel, and who do not timely opt-out of the settlement ("Settlement Class"). (Exhibit A ¶ 37.)

### C.   Releases

Class Members who did not timely submit requests for exclusion release all claims relating to the Released Parties which relate to or arise out of Loews Chicago Hotel and Loews Chicago O'Hare Hotel in Illinois, and which relate in any way to information that is or could be protected under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.*, or any other similar state, local, or federal law, regulation, or ordinance, or common law. (Exhibit A Sec. VII.)

### D.   Allocation

The allocation of the gross amount of the Settlement Fund to be paid to Settlement Class Members will be allocated as follows: (1) $1,175 per non-union member, less *pro rata* reductions for Class Counsel's Fee Award, Service Award to the Class Representative and Administrative

4

Expenses; and (2) $249.52 per union member, less *pro rata* reductions for Class Counsel's Fee Award, Service Award to the Class Representative and Administrative Expenses. (Exhibit A ¶ 42.) There are 792 non-union members and 424 union members in the Settlement Class. (Stephan Decl. ¶ 10.)

### E.      Service Payment, Attorneys' Fees, and Settlement Administration Expenses

Contemporaneous with this Motion, Plaintiffs will apply for Court approval, and Defendants will not oppose, distribution of a Service Payment to the Named Plaintiff, paid out of the Settlement Fund, of $10,000.00. (Ex. A ¶¶ 44(d), 71.) In addition, Class Counsel will petition the Court, unopposed, for approval of an award of attorneys' fees and costs of 33.3% of the Settlement Fund (or $345,120.03), costs and expenses not to exceed $13,000.00, and an additional amount of $12,635.00 for settlement administration expenses. (*Id*. ¶¶ 10, 68.) Class Counsel submits, and Defendants do not dispute, that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved.

### F.      Settlement Administration

The Parties engaged Rust Consulting, Inc., to prepare, print, mail, and e-mail the Class Notice, to track exclusions and objections, and to draft and mail settlement checks. (Admin Decl. ¶ 3.) On or about July 30, 2020, Counsel for the Defendants provided Rust with a mailing list containing Class Member's names, last known addresses, Social Security Numbers, last known phone numbers, and applicable employment information which were in Defendants' possession ("Class List"). The Class List contained data for 1,216 potential Class Members. (*Id.* ¶ 6.) The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service.  The NCOA

contains requested changes of address filed with the U.S. Postal Service. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Class Notice. (*Id*. ¶ 7.) On August 14, 2020, Class Notices were mailed to 1,216 Class Members and e-mailed to 747 Class Members. (*Id*. ¶ 8.) The Class Notice advised Class Members that they could submit an exclusion and/or objection postmarked by September 28, 2020. (*Id*.) Rust performed 248 address traces on Class Notices returned as undeliverable for the first time as of September 28, 2020. The address trace utilizes the Class Member's name, previous address and Social Security Number for locating a current address. Of the 248 traces performed, 78 more current addresses were obtained and Class Notices were promptly re-mailed to those Class Members via First Class mail. Of the 248 traces performed, Rust did not obtain updated addresses for 170 undeliverable Class Notices. Of the 78 Class Notices mailed to a more current address identified from trace, 10 Class Notices were returned to Rust as undeliverable a second time. As of this date, 180 Class Notices remain undeliverable. In addition, of the 747 Class Notices that were e-mailed, 46 Class Notices were undeliverable. (*Id*. ¶ 9.) As of this date, five Class Notices were returned by the Post Office with forwarding addresses attached as of September 28, 2020. Rust promptly re-mailed Class Notices to those Class Members via First Class mail. (*Id*. ¶ 10.) As of this date, Rust received one request to re-mail the Class Notice which was promptly re-mailed via First Class mail. (*Id*. ¶ 11.) As of this date, Rust received six exclusions and zero objections. (*Id.* ¶¶ 12-13.)

## G. Objections and Opt-Outs

The deadline to opt out of the settlement was September 28, 2020. (Admin. Dec. ¶ 8.) This deadline has now passed. Only six Class Members requested exclusion from the settlement, and no class member objected to the settlement. (*Id*. ¶¶ 12-13.)

### III. THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23

Under Rule 23(c)(2)(B), notice must provide:

the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23 (c)(2)(B).

As set forth in Section II.F above, the Parties' effort to effectuate notice by mail to the

Class Members meets the requirements of Rule 23(c)(2)(B).

### IV. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFFS' CLAIMS.

Rule 23(e) requires court approval for a class action settlement to ensure that it is

procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). A

"presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached

in arm's-length negotiations between experienced, capable counsel after meaningful discovery."

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D.

Ill. Feb. 28, 2012). "In reviewing a proposed settlement, the court should consider the judgment

of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th

Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts

examine the fairness, reasonableness and adequacy of a settlement in light of the "strong judicial

policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v.*

*Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted);

*see Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement

of class action litigation."). As set forth in detail below, the proposed settlement is fair, reasonable and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of BIPA and, thus, should be approved.

### A. The Settlement Is Fair, Reasonable, and Adequate.

To approve a proposed settlement of a class action under Rule 23, a court's review of a settlement agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). The Court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted).

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider five factors: (1) the strength of Plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). A court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199.

### 1. The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor).

Defendants agreed to settle this case for a maximum of $1,050,000.00 for a class of 1,244 Class Members, 422 of whom are union members and 804 of whom are non-union members. (Amended Settlement Agreement ¶ 3.) The Amended Settlement Agreement provides that if the class size fluctuates up or down by more than one percent, the total amount of the Settlement Fund will be adjusted up or down on a *pro rata* basis. (*Id*. ¶¶ 34, 43(a).) After removing duplicate entries from the Class List, the Settlement Class was reduced to 1,216 Class Members, 424 of whom are union members and 792 of whom are non-union members. (Admin Decl. ¶ 6; Stephan Decl. ¶ 10.) Accordingly, the total Settlement Fund will be $1,036,396.48.

The Settlement Fund shall be used to pay (i) Settlement Class Members' claims; (ii) a Service Award to the Class Representative ($10,000.00); (iii) the Fee Award (not to exceed 33.3% of the Settlement Fund); and (iv) the Administrative Expenses (not to exceed $30,000.00). (Amended Settlement Agreement ¶ 41(d).) This is a substantial settlement that represents significant value, particularly given the attendant risks of litigating the merits of the case through Rule 23 class certification, potential decertification proceedings, summary judgment practice and/or trial, and any appeals of decisions on those matters. (Stephan Decl. ¶ 15.)

This settlement provides much more than "a fraction of the potential recovery." *Cf. Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). If Defendants' conduct is deemed negligent, the gross settlement amount distributed directly to non-union Class Members exceeds 100% of recovery for one violation under BIPA. (Stephan Decl. ¶ 14). If the Court were to hold that the Labor Management Relations Act ("LMRA") preempts BIPA claims, union Class Members would recover nothing. The recovery here is well within the range of reasonable recovery and represents

9

significant value given the attendant risks of litigation. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

In evaluating the strength of a plaintiff's case on the merits balanced against the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety") Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the Plaintiff." *Isby*, 75 F.3d at 1200. Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this litigation is far from certain. On liability, Plaintiffs would have to overcome Defendants' defenses including but not limited to whether Defendants' union member employees are proper class members, whether Plaintiff properly pleaded her claims, and whether any alleged non-compliance with BIPA was negligent, intentional, or reckless to warrant statutory liquidated damages. The proposed Settlement ensures that Class Members will receive a settlement amount that is reasonable and consistent with the established facts as applied to the governing law. In light of the substantial recovery this settlement provides and the attendant risks of litigation, this factor weighs in favor of final approval.

### 2. Litigation Through Trial and Appeals Would Be Complex, Costly, and Long (Second Factor).

The second factor to be considered is the complexity, length, and expense of litigation that will be avoided by the proposed settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000). By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Although Class Counsel believes Plaintiffs' case is strong, it is subject to considerable risks and costs if the case is not settled.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The proposed settlement provides immediate benefits.

If litigation were to continue, extensive class discovery would be required to establish liability and damages. Here, further litigation would certainly result in dozens of depositions, a fully briefed motion for Rule 23 class certification, potential decertification proceedings, and summary judgment practice on liability, and would prolong the risk, time, and expense associated with a complex trial, or trials, for damages. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. This factor therefore weighs in favor of final approval.

11

### 3. The Reaction of the Class Has Been Positive (Third Factor).

The absence of objections by Class Members is significant in determining whether the proposed settlement is reasonable to the class as a whole. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members"). Here, no class members objected to the settlement and only six have requested exclusion. (Admin Decl. ¶¶ 12-13.) Thus, this factor also favors approval of the settlement.

### 4. Competent Counsel for All Parties Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux*, 690 F.2d at 634 (quoting *Armstrong*, 616 F.2d at 325); *see also Isby*, 75 F.3d at 1200. However, they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Importantly, here, there is no indication that the proposed Amended Settlement Agreement is the result of collusion. *See Isby*, 75 F.3d at 1200. The settlement was reached after intense negotiation with the dedicated assistance and oversight of an experienced and well-respected private mediator, Hon. Morton Denlow (Ret.).

"There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." *Newberg* §11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Class Counsel are competent and experienced in class actions, particularly wage and hour class actions of exactly this kind, and are familiar with the strengths and weaknesses of the claims and defenses. (Stephan Decl. ¶¶ 5-7). Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel were capable of making, and did make, well informed judgments about the value of the

claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the settlement. (*Id*. ¶ 16.) This factor therefore weighs in favor of final approval.

### 5. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).

This complex class action was resolved nearly two years after it was initiated. This period, along with time spent pre-litigation, involved research into BIPA and the rapidly evolving case law in this area, analysis of the strength and weaknesses of Plaintiff's claims and Defendants' defenses, including consultations with undisclosed experts, investigation into Defendants' policies and practices regarding the collection, capture, storage, use, and dissemination of biometric data, the exchange of confirmatory discovery regarding settlement, and a full-day mediation. (Stephan Decl. ¶¶ 8-9.) The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the settlement. (*Id*. ¶ 16.) Given the significant amount of time and resources spent by the Parties exchanging information and advancing settlement negotiations, this fifth, and final, factor favors final approval of the settlement.

### B. Approval of the Release of Class BIPA Claims Is Appropriate.

The Parties also request that the Court specifically approve the release of Class Members' BIPA claims as defined in the Settlement Agreement. Ex. A Sec. VII. In this case, as explained above, the terms of the settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery, and analysis. Because the Amended Settlement Agreement, including Class Members' releases of their BIPA claims, resolves a bona fide dispute and was reached after vigorous arm's-length negotiations, it should be approved. *See, e.g.*, *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Unopposed Motion for Final Approval of Amended Class Action Settlement and enter the Proposed Final Approval Order and Final Judgment, attached as Exhibit B.

Date:   October 28, 2020                                  Respectfully Submitted,

                                                          */s/ Haley R. Jenkins*
                                                          Ryan F. Stephan
                                                          Haley R. Jenkins
                                                          **STEPHAN ZOURAS, LLP**
                                                          100 N. Riverside Plaza
                                                          Suite 2150
                                                          Chicago, Illinois 60606
                                                          312.233.1550
                                                          312.233.1560 *f*
                                                          rstephan@stephanzouras.com
                                                          hjenkins@stephanzouras.com

                                                          **CLASS COUNSEL**

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on October 28, 2020, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.


  _/s/ Haley R. Jenkins_

15